Argued and submitted May 12, 2015, affirmed June 22, 2016

IRINA ANATOLEY BARANOVICH,
*Petitioner-Respondent,*

*v.*

Kim BROCKAMP,
Superintendent,
Coffee Creek Correctional Facility,
*Defendant-Appellant.*

Washington County Circuit Court
C112479CV; A154323

379 P3d 702

David B. Thompson, Assistant Attorney General, argued the cause for appellant. With him on the brief were Frederick M. Boss, Deputy Attorney General, and Anna M. Joyce, Solicitor General.

David J. Celuch argued the cause and filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

## SERCOMBE, P. J.

Defendant appeals a judgment vacating petitioner's convictions and granting her a new trial. Defendant assigns error to the post-conviction court's determination that petitioner's trial counsel provided her with constitutionally deficient legal representation by failing to object to hearsay evidence identifying petitioner as the perpetrator of the burglary with which she had been charged and in failing to object to hearsay evidence commenting on petitioner's character. As explained below, we affirm the judgment of the post-conviction court.

Our "review of a post-conviction court's determinations is not open-ended. We review such proceedings for errors of law." *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015). "In doing so, however, we are bound by the post-convictions court's findings of fact if they are supported by evidence in the record." *Richardson v. Belleque*, 277 Or App 615, 617, 373 P3d 1113 (2016). "If the post-conviction court failed to make findings of fact on all the issues—and there is evidence from which such facts could be decided more than one way—we will presume that the facts were decided consistently with the post-conviction court's conclusions of law." *Green*, 357 Or at 312.

Here, in the underlying criminal proceedings, petitioner was charged with first-degree burglary, first-degree aggravated theft, and first-degree theft stemming from a burglary and theft at a home owned by Rosabal. During the trial to the court, Kanifolsky, a neighbor of Rosabal's, testified that, on the day of the burglary, he noticed a red car drive by the house and that the woman in the passenger seat of the car was slightly familiar to him. Because Rosabal was not home at the time, Kanifolsky checked on the house and discovered that the door was unlocked and some furniture drawers had been opened. Rosabal, along with two other residents of the house, Alvarez and Fletcher, later returned to the house. Kanifolsky testified that he and Alvarez discussed the possible identify of the woman he had seen riding by in the red car. Alvarez showed Kanifolsky a number of pictures of petitioner on his cell phone. Kanifolsky testified

that he informed Alvarez, based on the pictures, that petitioner may have been the woman in the red car.

Alvarez testified at trial that he knew petitioner before the burglary and had spent time with her on a couple of occasions. On one such occasion, petitioner came to the house and Alvarez gave her a tour that included all the rooms and closets in the house. According to Alvarez, on the day of the burglary, his room was a mess, and his laptop and many items of clothing were missing. He testified that, after the burglary, Kanifolsky had identified petitioner as the perpetrator of the burglary:

"[THE STATE]:   Okay. Sometime after this crime had been committed, did you and some other people get together and try to figure out who the perpetrators were?

"[ALVAREZ]:   Yes.

"[THE STATE]:   And how did you go about doing that?

"[ALVAREZ]:   Well, after the police left and everything, I was talking to [Kanifolsky], our next-door neighbor, and he * * * started telling me, 'I think I know who she is. I think she's Russian.' He's Russian, too. Or Ukrainian, she said. And he goes, 'Her name is Irina.'

"And so I started thinking. Irina. Irina. Irina. Irina. And I go—boom, I got on my phone, and I looked her up on [social media], because at the time she was on my [social media account], one of my friends still.

"I showed him and he goes, 'Yep, that's her.'"

Petitioner's trial counsel did not object to that testimony.

Rosabal testified that he had met petitioner once, eight to 11 months before the burglary, when she had been at the house with Alvarez. According to Rosabal, immediately after the burglary, he went to petitioner's house, intending to ask her to return his property. Petitioner was not home, but Rosabal saw petitioner's brother. Rosabal testified, without objection from either side, that petitioner's brother told Rosabal that petitioner "was a really bad person, and he hopes she gets in trouble, and she does a lot of things like this." There was also testimony from law enforcement that the area around the window where the burglar or burglars entered the house had been examined and dusted for

fingerprints. There were fingerprints taken from the windowsill and a window screen, and fingerprints on the screen matched petitioner's.

In her petition for post-conviction relief, petitioner claimed, among other things, that her trial counsel failed to exercise reasonable professional skill and judgment in failing to object to (1) the hearsay evidence from Alvarez that Kanifolsky had identified petitioner as the perpetrator of the burglary and (2) the hearsay evidence from Rosabal that petitioner's brother had said she "was a really bad person, and he hopes she gets in trouble, and she does a lot of things like this." After a post-conviction trial at which it received exhibits from the parties and a declaration from petitioner's trial counsel, the court granted post-conviction relief on those two grounds and, accordingly, entered a judgment vacating petitioner's convictions and remanding the case for a new trial. In a letter opinion, the court explained that petitioner's trial counsel had provided petitioner with inadequate assistance in failing to object to the admission of the hearsay evidence in question, and that the counsel's inadequate performance "had a tendency to affect the result" of the trial.

With respect to the hearsay identification of petitioner as the perpetrator of the burglary with which she was charged, the post-conviction court explained that

"the failure had a tendency to affect the result. Surely, the fingerprints are a difficult obstacle to overcome in any event. Still, there is a reasonable possibility that the judge would not be convinced beyond a reasonable doubt that petitioner did not leave the print on the previous occasion when she was at the residence. It is a stretch but not impossibility. Like the carpet in *The Big Lebowski*, the placement of petitioner in the area at the time of the burglary really ties the state's case together. Without credible on-the-scene identification evidence, there is a small but not insubstantial chance of acquittal. Therefore, I must conclude that admitting that evidence had a tendency to affect the result of the trial."

As to the failure to object to the hearsay evidence commenting on petitioner's character, the court determined that the "testimony was harmful to petitioner." Noting that "any

trial judge would appreciate the significance of" testimony from "petitioner's own brother that she is a chronic thief who needs punishment," the court concluded that each of trial counsel's errors alone, "and certainly in combination, had a tendency to affect the result and justify post-conviction relief" under the Oregon Constitution.

ORS 138.530(1)(a) provides for post-conviction relief when there had been a "substantial denial in the proceedings resulting in petitioner's conviction * * * of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void." Both Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution guarantee a criminal defendant the right to adequate assistance of counsel. *Montez v. Czerniak*, 355 Or 1, 6, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014).

> "Those constitutional provisions require 'adequate performance by counsel' concerning the 'functions of professional assistance which an accused person relies upon counsel to perform on his behalf.' *Krummacher v. Gierloff*, 290 Or 867, 872, 627 P2d 458 (1981); *see also Strickland v. Washington*, 466 US 668, 686, 104 S Ct 2052, 80 L Ed 2d 674 (1984) (Sixth Amendment right to counsel requires not just counsel, but 'effective' counsel). This court, while interpreting and applying Article I, section 11, *independently of the* United States Supreme Court's interpretation of the Sixth Amendment, has nevertheless recognized that the standards for determining the adequacy of counsel under the state constitution are functionally equivalent to those for determining the effectiveness of counsel under the federal constitution."

*Id.* at 6-7. As we explained in *Real v. Nooth*, 268 Or App 747, 752-53, 344 P3d 33, *rev den*, 357 Or 550 (2015),

> "[t]o prevail on a post-conviction claim of inadequate assistance of trial counsel under Article I, section 11, a petitioner has the burden of showing, by a preponderance of the evidence, (1) deficient performance (*i.e.*, that trial counsel failed to exercise professional skill and judgment based on the law at the time trial counsel acted) that resulted in (2) prejudice to the petitioner (*i.e.*, that trial counsel's deficient performance had a tendency to affect the result of the

petitioner's prosecution). *Chase v. Blacketter*, 221 Or App 92, 96, 188 P3d 427, *rev den*, 345 Or 381 (2008). Under the Sixth Amendment, a petitioner must make a functionally equivalent showing. *Montez*[, 355 Or at 6-7]. Specifically, [a] petitioner must show that trial counsel's performance 'fell below an objective standard of reasonableness' and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Strickland*[, 466 US at 688]."

*See also Montez*, 355 Or at 7 (in evaluating a petitioner's state constitutional claim of inadequate assistance of counsel, the court must first determine whether the petitioner demonstrated that his lawyer failed to exercise reasonable skill and judgment and, if so, whether the petitioner demonstrated that counsel's failure "had a tendency to affect the result of [the] trial" (internal quotation marks omitted)). In determining whether a post-conviction petitioner received inadequate assistance of counsel, a court must first consider the state constitutional claim, and, if the petitioner prevails under Article I, section 11, the court will not consider whether the petitioner would prevail under the Sixth Amendment. *Johnson v. Premo*, 277 Or App 225, 236, 370 P3d 553 (2016).

Here, defendant does not contend that the post-conviction court erred in its evaluation of the performance prong in determining that petitioner received inadequate assistance of counsel. To the contrary, defendant proceeds under the assumption "that petitioner's trial counsel performed deficiently in the ways that the post-conviction court found." The state's only argument on appeal is that the post-conviction court erred in concluding that counsel's inadequate performance prejudiced petitioner. In defendant's view, the post-conviction court "applied an incorrect prejudice standard under the state test for inadequate assistance of counsel." More particularly, defendant asserts that, to demonstrate prejudice from trial counsel's deficient performance, a "petitioner must show that the likelihood of a different result is substantial, not just conceivable." However, according to defendant, the trial court incorrectly "believed that petitioner need only show that, in the absence of counsel's errors, a different result at trial was conceivable."

Petitioner counters that the court correctly applied the standard for prejudice under Article I, section 11: "In keeping with Oregon law, the [post-conviction] court found that the inadmissible evidence had a tendency to affect the result." Petitioner also points out the court's determination that, in the absence of the evidence, there was a "not insubstantial chance of acquittal" and that the court clearly found that "it reasonably appeared that the inadmissible evidence affected" the verdict. We agree with petitioner that the post-conviction court correctly applied the standard for prejudice under Oregon law.

Under Article I, section 11, "[p]rejudice means that counsel's failure had a tendency to affect the result of the prosecution." *Richardson*, 277 Or App at 625 (internal quotation marks omitted); *see also Johnson*, 277 Or App at 240 (applying that standard for prejudice; concluding that "'believable qualified expert' testimony regarding the possibility that" a murder victim died from a drug overdose rather than by drowning "would have had a tendency to affect whether the jury was convinced beyond a reasonable doubt that petitioner was guilty of the charged offenses" even though that evidence "might simply mean that petitioner caused the victim's death in a different way"); *Sproule v. Coursey*, 276 Or App 417, 426, 367 P3d 946 (2016) (concluding that the post-conviction court correctly determined that the petitioner did not meet his burden to demonstrate prejudice where the petitioner "failed to prove, by a preponderance of the evidence, that trial counsel's failure to object to the use of a leg brace without an adequate showing that petitioner posed a security risk had a tendency to affect the result of [the] trial" (internal citation omitted)).

As the Oregon Supreme Court recently explained in *Green*, the court "first used the phrase 'tendency to affect the result of the prosecution' more than 30 years ago in *Krummacher*, wherein the court concluded that 'only those acts or omissions by counsel which have a tendency to affect the result of the prosecution can be regarded as of constitutional magnitude.'" 357 Or at 321 (quoting *Krummacher*, 290 Or at 883). Furthermore, "[a]lthough the court in *Krummacher* did not elucidate the meaning of that term, the court applied it by concluding that the petitioner's

trial counsel's [error] did not have a tendency to affect the outcome of the prosecution because [it] was 'inconsequential.'" *Id.* (quoting *Krummacher*, 290 Or at 883). The court, in *Green*, further elaborated on the meaning of the term. According to the court,

> "where the effect of inadequate assistance of counsel on the outcome of a jury trial is at issue, it is inappropriate to use a 'probability' standard for assessing prejudice. Instead, because many different factors can affect the outcome of a jury trial, in that setting, the tendency to affect the outcome standard demands more than mere possibility, but less than probability. As the court stated in *Lichau*, the issue is whether trial counsel's acts or omissions *'could have tended to affect'* the outcome of the case."

*Id.* at 322-23 (quoting *Lichau v. Baldwin*, 333 Or 350, 365, 39 P3d 851 (2002) (emphasis in *Green*)); *see also Maxfield v. Nooth*, 278 Or App 684, 377 P3d 650 (2016). That is in contrast to cases where "the prejudice inquiry focuses on a different type of outcome, for example, whether in the absence of inadequate assistance of counsel the petitioner would have entered a guilty plea." *Green*, 357 Or at 323 n 13. In such cases, the court has "described the tendency to affect the outcome test in terms of actual probability." *Id.*

In light of the court's discussion in *Green*, to evaluate whether trial counsel's failure to object to the hearsay evidence was prejudicial, the post-conviction court was required to determine whether counsel's acts or omissions could have tended to affect the outcome of the trial. That is, whether there was some likelihood—"more than mere possibility, but less than probability"—of a different outcome of the trial in the absence of the errors that counsel made. That is the standard that the post-conviction court applied.

Contrary to defendant's assertion, the post-conviction court did not grant relief based merely on the determination that, in the absence of counsel's deficient performance, a different result was "conceivable." Instead, the court concluded, consistently with the applicable standard under Article I, section 11, that counsel's errors had a tendency to affect the result in the case. Again, with respect to the hearsay identification of petitioner as the perpetrator

of the burglary with which she was charged, the post-conviction court explained that

> "the placement of petitioner in the area at the time of the burglary really ties the state's case together. Without credible on-the-scene identification evidence, there is a *small but not insubstantial* chance of acquittal. Therefore, I must conclude that admitting the evidence had a tendency to affect the result of the trial."

(Emphasis added.) In other words, the court concluded that the likelihood that the evidence affected the result was not insignificant—that it was more than a mere possibility (or, more than merely conceivable). Furthermore, the court determined that counsel's failure to object to the hearsay evidence commenting on petitioner's character "was harmful to petitioner" and that "any trial judge would appreciate the significance of" testimony from "petitioner's own brother that she is a chronic thief who needs punishment." Thus, in the court's view, the errors, either alone or "certainly in combination, had a tendency to affect the result" of the trial in this case. Accordingly, we are unpersuaded by defendant's assertion that the post-conviction court failed to apply the correct legal standard to determine prejudice, and we reject defendant's assignment of error.

Affirmed.