Argued and submitted March 24, 2015, reversed on appeal, affirmed on cross-appeal August 10, 2016, petition for review denied February 2, 2017
(360 Or 851)

MICHAEL HEROFF,
*Petitioner-Respondent*
*Cross-Appellant,*

*v.*

Rick COURSEY,
Superintendent,
Eastern Oregon Correctional Institution,
*Defendant-Appellant*
*Cross-Respondent.*

Umatilla County Circuit Court
CV101322; A150617

380 P3d 1032

Linda Louise Bergman, Senior Judge.

Carolyn Alexander, Assistant Attorney General, argued the cause for appellant-cross-respondent. On the opening brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Erin C. Lagesen, Assistant Attorney General. With her on the reply-cross-answering brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Ryan O'Connor argued the cause and filed the brief for respondent-cross-appellant.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.

## SERCOMBE, P. J.

Defendant appeals from a judgment granting petitioner post-conviction relief based on the post-conviction court's determination that petitioner's criminal trial counsel provided inadequate assistance of counsel in failing to move to strike and request a curative jury instruction regarding testimony by a county sheriff that vouched for the credibility of the victim in the criminal case. Petitioner cross-appeals the denial of post-conviction relief based on counsel's failure to object to parts of the state's closing argument to the jury in the criminal trial. We conclude that the court erred in determining that petitioner was prejudiced by counsel's response to the vouching testimony and that the court did not err in denying post-conviction relief with respect to counsel's failure to object to the closing arguments. Accordingly, on appeal, we reverse the judgment of the post-conviction court, and, on cross-appeal, we affirm.

We review judgments granting or denying post-conviction relief for errors of law. *Baranovich v. Brockamp*, 279 Or App 52, 53, 379 P3d 702 (2016). "In doing so, however, we are bound by the post-conviction court's findings of fact if they are supported by evidence in the record." *Richardson v. Belleque*, 277 Or App 615, 617, 373 P3d 1113 (2016). "If the post-conviction court failed to make findings of fact on all the issues—and there is evidence from which such facts could be decided more than one way—we will presume that the facts were decided consistently with the post-conviction court's conclusions of law." *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015).

The amended petition for post-conviction relief asserts inadequate assistance of counsel in defending petitioner in the underlying criminal case against charges of six counts of sodomy, three counts of sexual abuse, and one count of unlawful sexual penetration, public indecency, private indecency, and endangering the welfare of a minor. Those charges arose in the following context: During most of 2005, petitioner resided in Granite, a small town in eastern Oregon. He was employed for part of that time at The Outback, a restaurant and store in Granite. S, a nine-year-old girl, also resided in Granite at that time with her mother.

S frequented The Outback and developed a friendship with petitioner.

In late 2006, S disclosed to others that petitioner had her perform fellatio on him on a number of occasions in 2005. S also asserted that petitioner had penetrated her vagina with his finger, caused her to touch his penis, touched her breast with his hand and mouth, and showed her pornographic videos. According to S, most of the abuse occurred in the public areas of The Outback when those areas were open or visible to the public, but one incident of sodomy took place in a nearby trailer and another occurred on a log in the nearby woods. The 2007 indictment for those crimes described the sodomy as having taken place "near the television area," "near the bar area," "near the restaurant tables," and "in the store area" inside the "Outback Restaurant," as well as "in the woods on a log" and in a "beat-up trailer near the Outback Restaurant." S also stated that, after she performed fellatio on defendant while he was sitting on an upholstered chair in The Outback, defendant wiped seminal fluid on the chair.

Prior to the September 2007 trial, the "store area" and "beat-up trailer" sodomy charges and the private indecency charge were dismissed by the state. During the four-day trial, a number of witnesses testified for the prosecution, including S, persons to whom she disclosed the sexual abuse, a co-owner of The Outback, the county sheriff who conducted the police investigation of the crimes, a scientific expert witness on DNA samples from the upholstered chair, and character witnesses for S.

Petitioner's witnesses at the underlying criminal trial included both co-owners and fellow employees of The Outback who testified about its layout and operations, a psychologist who opined on the memories of child victims of sexual abuse, relatives and acquaintances of petitioner, and persons who observed S's character and demeanor during the time in question.[1] The defense advanced that S's accounts of the crimes varied significantly (particularly with respect to the "in the woods on a log" incident) and, at

---

[1] Petitioner did not testify.

times, were not as descriptive as normal child victims, that her claims of sexual activity in the publicly visible areas of The Outback or during times when it was open to the public were implausible, that petitioner was of good character and S was not trustworthy, and that petitioner could not have shown pornography to S on a computer, as claimed, because he was computer illiterate.

As noted, at the criminal trial, the county sheriff, Palmer, was a witness for the state. Palmer testified about his interview with petitioner regarding S's allegations, the warranted search of petitioner's premises and computer, the layout of Granite and The Outback store and restaurant, S's interview by a child welfare agency, and the seizure and testing of the upholstered chair. On direct examination, Palmer testified that he asked S to "show [him] the log" that the "act had happened on," and she took him took him to an area in Granite near two dwellings, and "pointed out a stump." The prosecutor then asked, "And based on her actions and her words, was it your understanding that she believed that was a log?" Palmer answered in the affirmative.

On cross-examination, petitioner's trial counsel asked Palmer about the location of the stump, whether it was "in the woods" as S had claimed and the indictment described. Counsel then asked, "And even if this were the right spot, there was not [a] log there, right?" The state objected to that question as argumentative, which was overruled, the court explaining, "Well, we may get into what her vocabulary means and her perceptions but, nevertheless, he can ask the questions." Palmer responded, "It was a stump. * * * Is what she pointed and told me."

On redirect examination, the state asked Palmer again about S's understanding of the stump or log:

"Q. Let me follow up with the question about the issue of going out to the area of the woods with the stump or log, as it's been described variously.

"So was there any question in your mind in observing [S's] actions and words that she was leading you to where this action occurred?

"A. No. No. There was no doubt in my mind as to her credibility or her honesty or—

"[PETITIONER'S TRIAL COUNSEL]: Objection, Your Honor.

"THE COURT: Sustained.

"Q. Yeah. I just want to ask you about this specific issue of the log. Did you—you—can you recall what your question or your request of [S] was when you wanted to go out to this area? Do you recall basically what you asked her?

"A. I asked her if she could show me where the log was.

"Q. And after you asked that, she showed you what?

"A. She pointed to one of the stumps there in the photograph."

In closing argument, the state summarized the evidence and explained to the jury why that evidence proved beyond a reasonable doubt that petitioner was guilty of the charges. In discussing S's testimony about how she felt when petitioner licked her nipples, the prosecutor argued, "Well, to a young, undeveloped child, apparently, it really didn't feel like anything. Was that an accurate description? Probably. I think so." Ultimately, the state asked the jury to "go through * * * all of the facts that [S] said," including the videotape of her interview at a child abuse assessment center, and determine whether she was truthful, to "look at the things she says, and you make the call."

In closing argument, petitioner's trial counsel questioned S's credibility. He argued that her statements were inconsistent, that she failed to supply or did not remember sufficient details of the abuse, and that she was not truthful. That is, petitioner's counsel argued that S's testimony about the abuse at The Outback was unspecific, that for a person's first encounters with sexual abuse, "she can't give us any detail about where it happened or how it came to be, and this is completely contrary to everything that we've been told about memory, about human memory." Furthermore, counsel claimed that S failed to testify that she was sodomized "on a log in the woods" as charged:

"And so she takes Sheriff Palmer out there. Sheriff Palmer says, Well, where is this log[?] And so they go out there, and she goes, 'That's the log.' And her calling it a log doesn't

make it one, but being an enterprising little girl, finding no log, she points to [the stump] and says, 'It happened on this log.'"

Petitioner's counsel further argued that the fact that the victim reviewed her CARES videotape before testifying at trial called into question her credibility.

In rebuttal, the prosecutor again discussed S's testimony. He commented about S's testimony, that she could not remember much about petitioner kissing her nipples, "That's an honest kid. She didn't remember it, and she told us she didn't remember it." With respect to S's testimony about the first incident of sodomy, the prosecutor asserted, "Your first experience as a little child being sodomized by an adult, your body is going to be kind of shaky, and that's what she described, and that's how it was, and that's credible, and that's honest, and that's the truth." Still later, the prosecutor explained why there might be inconsistencies in S's testimony:

"Did she know what she was thinking when she was 9? Can she remember what she was thinking when she was 9 that motivated her? This is her perspective now, looking back trying to explain her actions that maybe in her mind now aren't real admirable. Now, why did I do that? Let me explain this to myself. Okay, here's why. Is that a lie? Is that dishonest? I don't think so. I think it's the child's perspective today, looking back on what she did."

The prosecutor summarized:

"She came forward, and she told the truth. She told the truth here this week. She was nervous. She didn't want to be up there, but she came up here. She told the truth, and she got it out, and she told her story."

Ultimately, the jury convicted petitioner of the sodomy charges related to acts near the television, the bar area, and the restaurant tables at The Outback, the sexual abuse charge for causing S to touch petitioner's penis, and public indecency. The sexual abuse conviction merged with one of the sodomy convictions. The jury found petitioner not guilty of the sodomy charge involving "a log in the woods," the sexual penetration charge, the sexual abuse charges for touching the victim's breast, and the charge of endangering

the welfare of a minor for displaying pornography. The court imposed an aggregate sentence of 170 months in prison. On direct appeal, the judgment of conviction was affirmed without opinion. *See State v. Heroff*, 229 Or App 237, 211 P3d 984 (2009).

Petitioner then filed his petition for post-conviction relief. In his amended petition, petitioner set out multiple allegations of inadequate assistance of counsel. As pertinent to the issues on appeal, he alleged:

> "Defense counsel * * * failed to object when the state's lead investigator in this case, Sheriff Glenn Palmer, vouched for the credibility of the alleged victim in this case. * * * The prosecutor * * * also vouched for the credibility of the alleged victim in this case."

The evidence relating to that claim was drawn from the record of the criminal trial.

As tried, the inadequate assistance claim pertaining to the sheriff's vouching testimony was not the pleaded failure to object. In fact, defense counsel did object to the vouching testimony. Petitioner argued that, after the objection to the vouching testimony was sustained, defense counsel was inadequate in failing to ask the court to strike Palmer's testimony that "[t]here was no doubt in my mind as to [S's] credibility or her honesty" and to instruct the jury to disregard that testimony. Petitioner argued that the circumstances of his case were indistinguishable from those in *Simpson v. Coursey*, 224 Or App 145, 197 P3d 68 (2008), *rev den*, 346 Or 184 (2009), in which we concluded that a petitioner was entitled to post-conviction relief for inadequacy of counsel where the petitioner's criminal trial counsel failed to move to strike and request a curative instruction after a detective improperly vouched for the credibility of the victim of sexual abuse.

The post-conviction court agreed with petitioner, concluding that

> "Sheriff Palmer testified 'There is no doubt in my mind as to her credibility or her honesty or . . .' The court sustained an objection, but the attorney did not request a curative or mistrial. This witness is the kind of trained, neutral expert whose opinion would carry great weight with a jury. He is

not like the family members or townspeople who testified as to credibility. The facts of *Simpson v. Coursey* are very similar and the Court of Appeals found that the attorney was inadequate for not moving for a mistrial or at least a curative instruction. Believing that case to be controlling here, on this issue only, this court finds the representation to be inadequate and the omission to have prejudiced the petitioner and grants post conviction relief."

On appeal from the post-conviction court's judgment, defendant argues that the court erred in granting post-conviction relief under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution. Specifically, defendant argues that it was a reasonable tactical choice to decline to follow up on a sustained objection to fleeting vouching testimony, and petitioner's trial counsel did not provide inadequate representation, even in light of *Simpson*, by making that tactical choice. Defendant further claims that—unlike the petitioner in *Simpson*—petitioner was not prejudiced by Palmer's vouching testimony, particularly given that the testimony was directed toward a crime for which the jury returned a not-guilty verdict. Defendant also complains that the court's factual finding that Palmer "is the kind of trained, neutral expert whose opinion would carry great weight with a jury" is without evidentiary support. Petitioner counters that the court's conclusions on inadequacy and prejudice are supported, not only by *Simpson*, but also by other case law.

Both Article I, section 11, and the Sixth Amendment guarantee a criminal defendant the right to adequate assistance of counsel. *Montez v. Czerniak*, 355 Or 1, 6, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014).

"Those constitutional provisions require 'adequate performance by counsel' concerning the 'functions of professional assistance which an accused person relies upon counsel to perform on his behalf.' *Krummacher v. Gierloff*, 290 Or 867, 872, 627 P2d 458 (1981); *see also Strickland v. Washington*, 466 US 668, 686, 104 S Ct 2052, 80 L Ed 2d 674 (1984) (Sixth Amendment right to counsel requires not just counsel, but 'effective' counsel). This court, while interpreting and applying Article I, section 11, independently of the United States Supreme Court's interpretation of the Sixth

Amendment, has nevertheless recognized that the standards for determining the adequacy of legal counsel under the state constitution are functionally equivalent to those for determining the effectiveness of counsel under the federal constitution."

*Id.* at 6-7. As we explained in *Real v. Nooth*, 268 Or App 747, 752-53, 344 P3d 33, *rev den*, 357 Or 550 (2015),

"[t]o prevail on a post-conviction claim of inadequate assistance of trial counsel under Article I, section 11, a petitioner has the burden of showing, by a preponderance of the evidence, (1) deficient performance (*i.e.*, that trial counsel failed to exercise reasonable professional skill and judgment based on the law at the time trial counsel acted) that resulted in (2) prejudice to the petitioner (*i.e.*, that trial counsel's deficient performance had a tendency to affect the result of the petitioner's prosecution). *Chase v. Blacketter*, 221 Or App 92, 96, 188 P3d 427, *rev den*, 345 Or 381 (2008). Under the Sixth Amendment, a petitioner must make a functionally equivalent showing. *Montez*[, 355 Or at 6-7]. Specifically, [a] petitioner must show that trial counsel's performance 'fell below an objective standard of reasonableness' and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Strickland*[, 466 US at 688]."

*See also Montez*, 355 Or at 7 (in evaluating a petitioner's state constitutional claim of inadequate assistance of counsel, the court must first determine whether the petitioner demonstrated that his lawyer failed to exercise reasonable skill and judgment and, if so, whether the petitioner demonstrated that counsel's failure "had a tendency to affect the result of [the] trial" (internal quotation marks omitted)). With respect to prejudice, as we explained in *Baranovich*,

"to evaluate whether trial counsel's failure to object to the hearsay evidence was prejudicial, the post-conviction court was required to determine whether counsel's acts or omissions could have tended to affect the outcome of the trial. That is, whether there was some likelihood—'more than mere possibility, but less than probability'—of a different outcome of the trial in the absence of the errors that counsel made."

279 Or App at 59.

As noted, the post-conviction court relied on our decision in *Simpson* in concluding that petitioner was entitled to post-conviction relief. We agree with the post-conviction court's view that *Simpson* provides the framework for the analysis of petitioner's claim of inadequate representation here, and so we turn to the facts and holdings in that case, as well as the parties' arguments on appeal about its precedential value.

In *Simpson*, the petitioner had been charged with four counts of first-degree sexual abuse. The defense contended that the victim fabricated the allegations. The victim testified about the sexual abuse; other witnesses corroborated some of the circumstances surrounding the alleged abuse. The chief investigating detective, Lenahan, described his interview with the victim about the abuse, and, when asked about the victim's demeanor in describing the abuse, testified:

"'[Prosecutor]: All right. And the, oh, during the interview with [the victim,] can you describe her demeanor for us?

"'[Lenahan]: She was a, as any, as most, at least in my experience, most 13-year-olds, especially females, it's hard for them to talk about things that have happened to their private areas, and she was no different than a lot of other 13-year-old girls that I have talked to. I thought she was very honest, very straightforward—

"'[Petitioner's criminal defense counsel]: Your Honor, I'll object to the characterization of the witness as "honest."

"'[The Court]: Sustained.

"'[Prosecutor]: Without going into your perception of whether, she was telling the truth or not, just her general demeanor, was she calm? Was she—

"'[Lenahan]: She was calm, but I could also tell that this was a very emotional time for her. At one point during my interview with her, she had indicated that it was hard to talk about what she was telling me as far as the touching went. She was able to continue later along those lines.'"

*Simpson*, 224 Or App at 148-49 (brackets in original). The petitioner's criminal trial counsel "did not move for a mistrial

or to strike and request a curative instruction ordering the jury to disregard the portion of Lenahan's testimony in which he vouched for the victim's honesty." *Id.* at 149. The petitioner was convicted of one count of sexual abuse in the first degree by a 10-2 verdict and was acquitted of the other three counts of sexual abuse. *Id.*

In the post-conviction relief proceedings, the petitioner offered an affidavit of trial counsel explaining his decision not to move for a mistrial. Counsel noted that he "'believed that having the objection sustained was sufficient to protect [petitioner's] rights. However, on reflection, I should have moved to strike. I do not believe I could have obtained a mistrial; however, I believe the judge would have given a curative instruction.'" *Id.* at 150 (brackets in original).

The post-conviction court denied relief, concluding that, while defense counsel should have moved to strike the vouching testimony, the petitioner had not been prejudiced by the failure to move to strike. *Id.* at 150-51.

On appeal, we noted the well-established principle that, "'in Oregon, a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth.'" *Id.* at 151 (quoting *State v. Milbradt*, 305 Or 621, 629-30, 756 P2d 620 (1988)). We further noted that, when the admitted vouching evidence corroborates the testimony of a sexual abuse victim about the abuse, "'because the witness' credibility was the principal issue, the error cannot be harmless.'" *Id.* at 152 (quoting *State v. McQuisten*, 97 Or App 517, 519-20, 776 P2d 1304 (1989)). Based on those premises, we opined:

> "We * * * conclude that counsel's failure to move to strike and request a curative instruction was unreasonable. As the Supreme Court held in *Milbradt*, even an immediate curative instruction by the trial court may not be effective to ensure that the jury would not be improperly influenced by vouching testimony if the instruction does not expressly tell the jury to 'disregard totally' the testimony. 305 Or at 630. Counsel's objection to Lenahan's testimony, even though it was sustained, did not ensure that the jury would disregard the testimony and thus was not sufficient to protect petitioner. To protect petitioner from unfair prejudice,

counsel needed to move for a mistrial or, at a minimum, move to strike the testimony and request a curative instruction telling the jury to disregard it."

*Id.* at 153.

We further concluded that the inadequate assistance of counsel was prejudicial given the specific facts of the case:

"We next determine whether that failure was prejudicial to petitioner's case—that is, whether it had a tendency to affect the outcome of the prosecution. \* \* \* Of course, the question of whether the vouching affected the verdict is a factor in our analysis; if there is little likelihood that the testimony affected the verdict, then there is little reason to think that striking it and giving a curative instruction would have tended to affect the result.

"We readily conclude that Lenahan's testimony had at least some likelihood of influencing the jury and thus affecting the verdict. The jury heard a uniformed police detective vouch for the victim's honesty. The possibility that the testimony affected the verdict is magnified by the fact that the criminal trial appears to have been an extremely close case for the jury. It returned a verdict of acquittal on three of the four counts of sexual abuse, and its guilty verdict on the fourth count was by a 10 to 2 vote. The charges all involved the same victim and turned on whether the jury believed the victim's testimony. Thus, the possibility that Lenahan's testimony vouching for the credibility of the victim affected the verdict is very real."

*Id.* at 154.

We finally determined that the generic instruction given to the jury at the conclusion of the case ("'When I have sustained objections to evidence, or ordered that evidence be stricken or excluded from your consideration, you must follow these rulings.'") did not cure any prejudice from the failure to strike and instruct earlier, because the closing instruction did not tell the jury to "disregard totally" the vouching evidence, and because it was untimely and "not given at a time when it might have been able to undo the potential for unfair prejudice caused by Lenahan's vouching." *Id.* at 155-56.

In this post-conviction proceeding, defendant argues that the holdings in *Simpson* about inadequate assistance of counsel for failure to move to strike and obtain a curative instruction as well as the prejudicial effect of that inadequate assistance are specific to the facts of that case. According to defendant, the nature of the vouching at issue in this case, along with the context in which it arose and the resulting verdict, compel a different result. We agree with defendant.

Our cases recognize that any claim of inadequate assistance of counsel is evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances; the post-conviction court's standard of review is a highly deferential one." *Hale v. Belleque*, 255 Or App 653, 659, 298 P3d 596, *adh'd to as modified on recons*, 258 Or App 587, 312 P3d 533, *rev den*, 354 Or 597 (2013). As we explained in *Sullivan v. Popoff*, 274 Or App 222, 231-32, 360 P3d 625 (2015), *rev den*, 358 Or 833 (2016):

> "With regard to trial counsel's performance, [the standards for inadequate assistance of counsel under the state and federal constitutions] require us to evaluate the reasonableness of trial counsel's 'skill and judgment' under the circumstances existing at the time of the challenged act or omission, and do not permit us to 'second guess' an attorney's handling of a case 'with the benefit of hindsight.' [*Pereida-Alba v. Coursey*, 356 Or 654, 662, 342 P3d 70 (2015).] Where a trial lawyer made a 'conscious choice' regarding a particular act or omission, we evaluate the reasonableness of that conscious decision under the circumstances that confronted counsel at the time of the decision. *Id.* at 670."

We have concluded that the failure of criminal trial counsel to object to vouching testimony may, in some circumstances, be a plausible tactical choice. *See, e.g., State v. Hanson*, 280 Or App 196, 203-04, 380 P3d 1136 (2016) (failure to object to vouching evidence from the victim's mother on a collateral issue where criminal trial counsel later used the vouching testimony in cross-examination of the vouching witness); *State v. Ramirez-Estrada*, 260 Or App 312, 323-24, 317 P3d 322 (2013), *rev den*, 355 Or 317 (2014) (vouching testimony elicited by criminal trial counsel for purposes

of arguing that the witness had an insufficient basis for a vouching opinion).

It is not clear, under the circumstances of this case, whether petitioner's criminal trial counsel made a tactical choice to not move to strike and instruct. Defense counsel properly objected to Palmer's vouching testimony. That objection (even though it was sustained), like in *Simpson,* presumably "did not ensure that the jury would disregard the testimony and thus was not sufficient to protect petitioner." 224 Or App at 153. The criminal trial record does not contain evidence that the vouching testimony was useful to the defense or was, in fact, used by the defense. Nor is it clear that the failure to move to strike and cure was a strategic choice to avoid highlighting the vouching testimony. The objection to that testimony already provided that focus for the jury. An immediate instruction to the jury to "totally disregard" the testimony would presumably dissipate, rather than exacerbate, that focus.

We need not determine whether defense counsel was adequate in making a tactical choice to not move to strike and instruct. No prejudice occurred to petitioner from any inadequate representation because the failure to strike the vouching testimony and caution the jury did not have a tendency to affect the verdict in the criminal trial. Although petitioner asserts that prejudice from failing to strike and instruct on any vouching testimony is manifest or presumptive, the determination of prejudice in a criminal trial is fact-specific and not presumptive in character:

"Whether petitioner was prejudiced [by inadequate assistance of counsel] is a question of law based on an extensive consideration of the evidence presented by both the state and petitioner at the criminal trial. Furthermore, * * * our consideration includes any other aspects of the criminal trial that are pertinent to the issue * * * considered in light of the issues at trial in their entirety[.]"

*Wright v. Nooth,* 264 Or App 329, 334, 336 P3d 1, *rev den,* 356 Or 517 (2014) (second ellipsis and brackets in original; citations and internal quotation marks omitted).

In petitioner's criminal trial, the vouching testimony related to the credibility of the victim in testifying

about an issue that was immaterial to the jury's guilty verdicts. That is, the vouching testimony was given in response to questions about whether S believed that abuse occurred on a log as opposed to a stump. As noted, in the initial examination of Palmer by the prosecutor, Palmer was asked, "And based on her actions and her words, was it your understanding that she believed that [the stump] was a log?" Palmer responded, "Yes." Petitioner's trial counsel cross-examined about whether the location identified by S was in the woods or not, and then asked, "And even if this were the right spot, there was not [a] log there, right?" Palmer answered, "It was a stump. * * * Is what she pointed and told me." The first question on redirect by the prosecutor was:

> "Let me follow up with the question about the issue of going out to the area of the woods with the stump or log, as it's been described variously.
>
> "So was there any question in your mind in observing [S's] actions and words that she was leading you to where this action occurred?"

The vouching, objection, and court ruling then ensued. The prosecutor then acknowledged the objection and directed the testimony to the log/stump issue:

> "[PALMER]:   No. No. There was no doubt in my mind as to her credibility or her honesty or—
>
> "[PETITIONER'S TRIAL COUNSEL]:   Objection, Your Honor.
>
> "THE COURT:   Sustained.
>
> "[PROSECUTOR]:   Yeah. I just want to ask you about this specific issue of the log."

Palmer vouched, in short, about S's credibility in accurately identifying for Palmer the location of one of the sodomy crimes, a different issue than her credibility for others and the jury in testifying that she had been abused. Even if the vouching were directed to whether S accurately reported that she had been abused on the stump or log, it did not affect any determination of guilt by the jury. Defendant was acquitted of the sodomy "in the woods on a log" charge. Palmer vouched for S's testimony that was particular to that charge and not to the others. Thus, that vouching had no

tendency to affect the jury's determination of guilt on different charges that were proven by different testimony and evidence. In light of the jury's not-guilty verdict on the charge to which the vouching evidence pertained, the post-conviction court erred in concluding that petitioner was prejudiced by trial counsel's failure to move to strike and obtain a cautionary instruction on Palmer's vouching testimony.

As noted, petitioner cross-appeals the court's denial of post-conviction relief based on his allegation that trial counsel was inadequate for failing to object to parts of the closing arguments to the jury by the prosecutor. Petitioner argues that, in closing, the prosecutor improperly vouched for the truthfulness of S and that defense counsel's failure to object to those arguments affected the jury's verdicts. The post-conviction court found that "DA's closing not really vouching—it went to the accuracy of the testimony, not the truthfulness of the child."

As noted, in closing, in discussing S's testimony about how she felt when petitioner licked her nipples, the prosecutor argued that, "to a young, undeveloped child, apparently, it really didn't feel like anything. Was that an accurate description? Probably. I think so."

In rebuttal, the prosecutor again discussed S's testimony. He commented about S's testimony that she could not remember details of certain incidents of abuse: "That's an honest kid. She didn't remember it, and she told us she didn't remember it." With respect to S's testimony about the first incident of sodomy, the prosecutor asserted, "Your first experience as a little child being sodomized by an adult, your body is going to be kind of shaky, and that's what she described, and that's how it was, and that's credible, and that's honest, and that's the truth." Additionally, the prosecutor argued:

"Did she know what she was thinking when she was 9? Can she remember what she was thinking when she was 9 that motivated her? This is her perspective now, looking back trying to explain her actions that maybe in her mind now aren't real admirable. Now, why did I do that? Let me explain this to myself. Okay, here's why. Is that a lie? Is that dishonest? I don't think so. I think it's the child's perspective today, looking back on what she did."

According to the prosecutor, S "came forward, and she told the truth. She told the truth here this week. She was nervous. She didn't want to be up there, but she came up here. She told the truth, and she got it out, and she told her story." Defendant asserts that that argument constituted improper vouching.

In *State v. Parker*, 235 Or 366, 377-78, 384 P2d 986 (1963), the Supreme Court explained:

> "It is improper for counsel to interject his personal appraisal of the witnesses' credibility in a way which would suggest to the jury that the appraisal is based upon counsel's own knowledge of facts not introduced into evidence. * * * The rule is sometimes stated more broadly, making improper any comment by counsel upon the credibility of his witnesses."

On the other hand, it is permissible for a prosecutor to argue that the jury should infer that a witness is credible based on the evidence in the record, so long as the prosecutor does not vouch for the witness by interjecting his or her personal opinion of the witness's credibility. *See U.S. v. Cordova*, 186 F App'x 742, 745 (9th Cir 2006) ("A prosecutor may, of course, argue that the record supports a witness's credibility."); *U.S. v. Necoechea*, 986 F2d 1273, 1279 (9th Cir 1993) (explaining that the prosecutor permissibly argued that a witness "was telling the truth, an argument the prosecutor had to make in order to convict [the defendant]," because the prosecutor's comments "d[id] not imply that the government [was] assuring [the witness's] veracity, and [did] not reflect the prosecutor's personal beliefs"); *cf. State v. Charboneau*, 323 Or 38, 48, 913 P2d 308 (1996) ("[W]hen a lawyer presents a witness and argues to the jury that it should find facts in accordance with that witness's testimony, the jury may infer that the lawyer believes the witness. That circumstance, which usually is present, * * * is permissible."); *State v. Purrier*, 265 Or App 618, 622, 336 P3d 574 (2014) (concluding that the jury was likely to have understood the prosecutor's statement that the jury had to choose between the defendant's and the victim's "stories" to be permissible "advocacy about how the jury should assess the credibility of the witnesses, including the victim"); *State v. Hanson*, 10 Or App 363, 365, 499 P2d 825, *rev den* (1972) (declining to

address unpreserved challenge to prosecutor's statements in closing argument, in which the prosecutor accused the defendant and a witness of lying, "because we agree with the characterization in the state's brief that the 'prosecutor struck hard blows, but not unfair ones'").

We agree with the post-conviction court that the prosecutor's argument to the jury was not factual assertions purportedly based on "counsel's own knowledge of the facts not introduced into evidence," but rather argument that the record supports the credibility of S. In that context of that argument, the prosecutor's two references to "I think so" and "I don't think so" would likely have been interpreted by the jury to refer to the victim's own beliefs or to inferences that the jury could reasonably draw from the record, rather than statements of the prosecutor's own beliefs. *See State v. Wasyluk*, 275 Or App 149, 152-53, 363 P3d 519 (2015) (concluding that it was "plausible" in the circumstances of that case that a prosecutor's references to "I think" and "I believe" in closing arguments were references to inferences that the jury should make). That conclusion by the jury was even more likely given the pretrial and post-trial jury instructions by the court to that same effect—that it was the jury's "sole responsibility to make all decisions about the facts of this case" and that "[t]he lawyers' statements and arguments are not evidence." *See State v. Washington*, 355 Or 612, 660, 330 P3d 596, *cert den*, ___ US ___, 135 S Ct 685 (2014) ("Generally, a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's improper statement."). Thus, we conclude that the post-conviction relief court did not err in failing to grant relief based on his counsel's failure to object to the prosecutor's comments in his closing argument and reject petitioner's assignment of error on cross-appeal.

Reversed on appeal; affirmed on cross-appeal.