590 April 9, 2025 No. 316

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JESSIE LEE WILSON,
*Defendant-Appellant.*

Lane County Circuit Court
21CR40776; A181487

Bradley A. Cascagnette, Judge.

Submitted March 6, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and David O. Ferry, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J.

Affirmed.

### AOYAGI, P. J.

Defendant appeals his conviction for first-degree unlawful sexual penetration, ORS 163.411. In two assignments of error, he claims that the prosecutor made improper statements in closing argument that denied him a fair trial and thus require reversal under *State v. Chitwood*, 370 Or 305, 312, 518 P3d 903 (2022). We are unpersuaded that the *Chitwood* standard for reversal is met and, accordingly, affirm.

In August 2021, 10-year-old L spent the night at her best friend's house. Defendant is her best friend's father. L shared a bed with her best friend's little sister, and defendant got into bed with them at some point. According to L, defendant digitally penetrated her while he was there, and she did not perceive him to be asleep at the time. L fled the house and returned home, where she tried to awaken her mother, then called 9-1-1. Defendant was charged based on that incident. At trial, his primary defense was that he suffers from "sexsomnia," which his expert described as a type of "confusion arousal" in which there is an abrupt disruption of the sleep process that leads to sexual behavior instead of sleepwalking. The state contested that defendant was asleep during the incident and sought to prove that he was aware of what he was doing.

As part of his closing argument, the prosecutor pointed the jury to the court's instruction on evaluating witness testimony and what it said about considering "such things as the manner in which the witness testifies, the nature or quality of the witness' testimony, evidence that contradicts the testimony of the witness, [and] evidence concerning the bias, motives, or interests of the witness." The prosecutor then discussed L's demeanor during her testimony and how it evinced that she was telling the truth about what happened. After describing what L had said on the stand and her demeanor while testifying, the prosecutor concluded that section of his closing argument by stating,

> "She told you the truth about what happened to her. And she told the truth to those officers that she spoke to that night, to the 911 call operators, and to [the forensic interviewer] to the extent that she could talk about it. That's what happened.

"Now, we also have DNA evidence. But I want to be really clear with you. At the very bottom of the first page of these instructions, it says, generally, the testimony of any witness whom you believe is sufficient to prove any fact in dispute. I'm going to read that one more time. Generally, the testimony of any witness whom you believe is sufficient to prove any fact in dispute. If you believe her, then that's it. If you believe her, that's sufficient."

The prosecutor then discussed the DNA evidence.

Defendant did not make any objection at the time, but now argues that the foregoing statements regarding L having told "the truth" and it being "what happened" constituted impermissible vouching for L. He asserts that they "removed the credibility determination from the factfinder, replacing it with definitive statements about [L]'s credibility from an experienced prosecutor regarding the central fact at issue in this case."

Defendant also challenges statements that the prosecutor made in rebuttal closing argument to which he did not object at the time. The prosecutor pointed to inconsistencies in defendant's story about the events leading up to the incident and argued that "[t]hose inconsistencies are what make that a lie" and that "if you don't believe him when it comes to that, you shouldn't believe him when he says, I don't remember, I was asleep." A minute or so later, the prosecutor described "I don't remember" as a "defense that kids use all the time" and argued that, when defendant used it with a police detective on the night of the incident, it "demonstrate[d] a consciousness of his own guilt." The prosecutor then discussed evidence that defendant had lied to his partner about going to L's house to try to find her after she disappeared as further evidence of consciousness of guilt, concluding, "Everyone knows you have to do more for a missing 10-year-old child. That is his consciousness of his own guilt. And if he has that consciousness of his own guilt, then he wasn't asleep. He remembered what he did because he chose to do it." Later, near the end of rebuttal closing, after discussing the reasonable doubt standard, the prosecutor urged the jury not to "buy what [d]efendant is trying to sell you"; argued that defendant's claim of "being asleep and not remembering" was "not reasonable" and that

"[d]efendant chose to do what he did"; and urged the jury "to go back and deliberate and find him guilty."

Defendant contends that, by making those statements, the prosecutor improperly conveyed to the jury his own personal "opinion" that the sexsomnia defense was "a lie" and his own personal "belie[f]" that "defendant was lying about being asleep, lied to his partner about it, and consciously chose to commit the crime." Defendant describes the prosecutor as impermissibly "attempt[ing] to replace the jury's deliberation and assessment of reasonable doubt with the prosecutor's experienced opinion."

Because defendant did not object to any of the foregoing statements when they were made, we are limited to plain-error review, as defendant acknowledges. *See State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) (stating the general rule that "an issue not preserved in the trial court will not be considered on appeal"); ORAP 5.45(1) (we have discretionary authority to correct "plain" errors). An error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013).

For a "plain" error to exist in the specific context of prosecutorial misconduct in closing argument, it must be "beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial." *Chitwood*, 370 Or at 312 (internal quotation marks omitted). That is, "a defendant asserting plain error must demonstrate that the prosecutor's comments were so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial." *Id.* "[P]rosecutorial statements that were improper but *curable* are not an appropriate subject of plain-error review, because, in such circumstances, the defendant was not denied a fair trial." *State v. Durant*, 327 Or App 363, 365, 535 P3d 808 (2023) (emphasis in original). "That is important because, '[g]enerally, a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct.'" *State v. Babcock*, 327 Or App 358, 360, 535 P3d 345 (2023)

(quoting *State v. Davis*, 345 Or 551, 583, 201 P3d 185 (2008), *cert den*, 558 US 873 (2009)).

In this case, we agree with the state that the prosecutor's arguments were not plainly improper. That is, when the statements are read in context, it is not obvious that the prosecutor was conveying his own personal credibility opinions, as opposed to making credibility *arguments* from the evidence with the understanding that it was ultimately for the jury to decide who they believed. *Compare State v. Montgomery*, 327 Or App 655, 660, 536 P3d 627 (2023) (statements in closing argument that conveyed the prosecutor's own beliefs on credibility were improper), *with Davis v. Cain*, 304 Or App 356, 364, 467 P3d 816 (2020) ("[P]rosecutors have substantial leeway to argue about the *evidence* and to try to persuade jurors to their view of evidence" as long as they do not "interject their own personal views of a witness's credibility." (Emphasis in original.)).

Whereas it is improper for a prosecutor to "vouch for the witness by interjecting his or her personal opinion of the witness's credibility," a prosecutor may argue "that the jury should infer that a witness is credible based on the evidence in the record[.]" *Heroff v. Coursey*, 280 Or App 177, 194, 380 P3d 1032 (2016), *rev den*, 360 Or 851 (2017); *see also State v. Sperou*, 365 Or 121, 135, 442 P3d 581 (2019) (Counsel "may not express personal opinions as to witnesses' credibility" but "may argue that the *jury* should regard a witness as credible (or not) based on, for instance, the witness's demeanor and testimony." (Emphasis in original.)). Pointing to inconsistencies in the evidence and illogic in a defendant's statements "to argue why the factfinder should doubt [the] defendant's credibility * * * is exactly what a prosecutor is supposed to do." *State v. Slay*, 331 Or App 398, 403-04, 545 P3d 768, *rev den*, 372 Or 560 (2024).

Here, the statements by the prosecutor that defendant now challenges do not obviously fall on the wrong side of that line. In any event, they certainly were not so egregious as to have been incurable had defendant objected. *See Durant*, 327 Or App at 365 (under *Chitwood*, the prosecutor's statements must have been "so egregious that striking them or giving a curative instruction would have been

insufficient"). Accordingly, those statements did not deny defendant a fair trial.

Affirmed.