Argued and submitted May 16, reversed and remanded for entry of judgment granting post-conviction relief November 26, 2008, petition for review denied April 22, 2009 (346 Or 184)

## NICHOLAS PAUL SIMPSON,
*Petitioner-Appellant,*

*v.*

## Rick COURSEY,
Superintendent,
Eastern Oregon Correctional Institution,
*Defendant-Respondent.*

Umatilla County Circuit Court
CV051221; A133657

197 P3d 68

Dennis N. Balske argued the cause and filed the briefs for appellant.

Erin C. Lagesen, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

**ROSENBLUM, J.**

Petitioner appeals a judgment denying his petition for post-conviction relief, in which he claimed 14 different ways in which he was denied adequate assistance of counsel at his criminal trial. On appeal, petitioner assigns error to the post-conviction court's denial of his petition. We conclude that petitioner was denied adequate assistance of counsel when trial counsel failed to move to strike and request a curative instruction after the chief investigating detective improperly vouched for the credibility of the victim. Accordingly, we reverse.

The facts relevant to our review of the post-conviction court's judgment are as follows: Petitioner was charged with four counts of first-degree sexual abuse, ORS 163.427, stemming from accusations made by the victim, petitioner's stepsister. The defense theory of the case was that the victim fabricated the accusations to get attention from her neglectful mother. The prosecution presented five witnesses in its case-in-chief in this order: the victim's mother, the victim, her brother, her friend, and Detective Lenahan, the lead investigator in the case. Petitioner testified on his own behalf and called as witnesses his father and another friend of the victim.

The victim's mother testified that petitioner, the victim, and the victim's brother frequently watched television together in petitioner's bedroom, sometimes with the door locked. She further testified that she was alarmed by these occurrences, particularly on one occasion when the door to petitioner's bedroom was locked with the victim and petitioner inside. On that occasion the victim's mother knocked, but no one came to the door right away. The victim's mother noticed that the victim's hair was tousled when she came to the door. She testified that the victim did not tell her about the abuse until about two years later, when the victim became upset during an argument and blurted out that petitioner had sexually abused her.

The state next called the victim, who testified that, on at least 10 occasions, while she and petitioner were watching television in petitioner's bedroom, petitioner molested

her by touching her breasts, vagina, and buttocks under her clothing and rubbing his penis on her vagina or buttocks through their clothing. She testified that this usually occurred when petitioner, her brother, and she wrestled while watching television in petitioner's bedroom. The victim testified that those incidents occurred when her brother was momentarily out of the bedroom or when he was in the room, but asleep. She explained that she did not report the abuse for approximately two years because she did not want to cause problems for her mother's marital relationship with petitioner's father.

The state then called as a witness the victim's brother, who corroborated some aspects of the victim's account of events, specifically that petitioner, the victim, and he wrestled together in petitioner's bedroom, and that on a few occasions when they were all watching television in petitioner's bedroom, petitioner asked him to leave the room to get petitioner a drink of water or milk. The victim's friend testified that the victim had reported the abuse to her at the time and again, more recently, but that the victim had asked her not to say anything about it both times.

As the state's final witness, Detective Lenahan testified about his role as the lead investigator in the case. Specific to our analysis, he described his interview of the victim. The following portion of that testimony is pertinent to our analysis:

"[Prosecutor]: All right. And the, oh, during the interview with [the victim,] can you describe her demeanor for us?

"[Lenahan]: She was a, as any, as most, at least in my experience, most 13-year-olds, especially females, it's hard for them to talk about things that have happened to their private areas, and she was no different than a lot of other 13-year-old girls that I have talked to. I thought she was very honest, very straightforward—

"[Petitioner's criminal defense counsel]: Your Honor, I'll object to the characterization of the witness as 'honest.'

"[The Court]: Sustained.

"[Prosecutor]: Without going into your perception of whether she was telling the truth or not, just her general demeanor, was she calm? Was she—

"[Lenahan]: She was calm, but I could also tell that this was a very emotional time for her. At one point during my interview with her, she had indicated that it was hard to talk about what she was telling me as far as the touching went. She was able to continue later along those lines."

Petitioner's counsel did not move for a mistrial or to strike and request a curative instruction ordering the jury to disregard the portion of Lenahan's testimony in which he vouched for the victim's honesty.[1]

In the defense case, petitioner's father testified that he never observed petitioner acting in an unusual or suspicious way with the victim, that he was not alarmed by the wrestling between the victim and petitioner, and that he believed that petitioner was innocent. Petitioner next called a different friend of the victim's who was in the room one of the two times that the victim told the friend who testified in the state's case-in-chief that petitioner had molested her. That friend testified that she (the friend) did not remember the victim saying anything related to petitioner molesting her (the victim). Finally, petitioner testified in his own defense. He denied touching the victim in any improper way, and testified that the wrestling that alarmed the victim's mother was innocent and was initiated by the victim or her brother.

Petitioner was convicted of one count of first-degree sexual abuse by a 10-2 jury verdict. The jury acquitted petitioner of the other three counts. Petitioner appealed, and we affirmed without opinion. *State v. Simpson*, 192 Or App 603, 89 P3d 95 (2004). Petitioner next filed a petition for postconviction relief. He asserted 14 claims for relief, the second of which provides the basis for this reversal. That claim alleged that counsel's failure to move for a mistrial or to strike and request a curative instruction after Lenahan

---

[1] The trial court did not *sua sponte* declare a mistrial or explicitly strike the vouching testimony and give a curative instruction to the jury, nor did counsel object to the trial court's failure to do so.

vouched for the victim's credibility denied petitioner his constitutional right to adequate assistance of counsel.

As evidence to support his claims for relief at his post-conviction trial, petitioner offered an affidavit of his criminal trial counsel. In the affidavit, counsel explained his decision not to move for a mistrial or to strike and request a curative instruction as follows:

> "At the time, I believed that having the objection sustained was sufficient to protect [petitioner's] rights. However, on reflection, I should have moved to strike. I do not believe I could have obtained a mistrial; however, I believe the judge would have given a curative instruction."

Counsel also stated that he was surprised that the jury convicted defendant.

In addition to the affidavit of counsel, petitioner called criminal defense attorney Larry Matasar as an expert witness to testify as to the adequacy of counsel's performance. Matasar testified that an adequate and effective defense attorney should have done more than simply object to Detective Lenahan's vouching testimony. He testified that Oregon courts have repeatedly held vouching of that type to be unfair and damaging to the defendant in a criminal trial and that counsel failed to protect petitioner's credibility when he merely objected to Lenahan's vouching. Matasar acknowledged that, in some cases, it could be a reasonable strategic decision not to move for a mistrial despite being entitled to one.

The post-conviction court noted mistakes in counsel's performance but ultimately denied the petition. In addressing petitioner's second claim of error, relating to Lenahan's improper vouching, the court found that counsel's failure to move for a mistrial was strategic—that is, he did not want a mistrial because he thought he was winning the trial. The court based that finding on the portion of counsel's affidavit in which he stated that he was surprised by the jury's verdict because he thought he had won the trial. With respect to counsel's failure to move to strike and request a curative instruction, the court concluded that "it would have

been appropriate to strike the testimony." However, it concluded that counsel's failure to move to strike was not prejudicial to petitioner.

■■ Petitioner now appeals the post-conviction court's judgment, which we review to determine whether the facts found are supported by the record and whether the legal conclusions drawn from those facts are correct. *Chew v. State of Oregon*, 121 Or App 474, 476, 855 P2d 1120, *rev den*, 318 Or 24 (1993). We are bound by the factual findings of the post-conviction court if there is evidence in the record to support those findings. *Brock v. Wright*, 98 Or App 323, 326, 778 P2d 999 (1989). Petitioner assigns error to the post-conviction court's denial of all 14 of his claims for relief. Because we conclude that petitioner is entitled to relief on his second claim, we do not consider the remaining 13 claims. Petitioner's second claim did not segregate counsel's failure to move for a mistrial from his failure to move to strike and request a curative instruction, but we segregate the issues for purposes of our analysis, and we conclude that petitioner was prejudiced by counsel's unreasonable failure to move to strike and request a curative instruction, separate and apart from any failure to move for a mistrial.

■ We note, as a preliminary matter, several key cases on the subject of improper vouching in criminal trials. In *State v. Milbradt*, 305 Or 621, 629, 756 P2d 620 (1988), the Supreme Court emphatically confirmed that the task of assessing credibility is for the factfinder alone, no matter how qualified a witness is as an expert. In reversing the defendant's convictions for rape and sexual abuse, the court stated:

> " 'We expressly hold that in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth.' An opinion that a person is not deceptive, could not lie without being tripped up, and would not betray a friend (to wit: the defendant) is tantamount to the same thing."

305 Or at 629-30 (quoting *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983)). In *State v. McQuisten*, 97 Or App 517, 519-20, 776 P2d 1304 (1989), we reversed the defendant's conviction because the trial court allowed the jury to consider the investigating officer's statements that "it is

pretty hard for [a sexual assault victim] to fabricate those feelings" and that the complainant was showing "very true emotions and signs" of sexual abuse. We held that, "because the witness' credibility was the principal issue, the error cannot be harmless." *Id.; see also State v. Vargas-Samado*, 223 Or App 15, 18, 195 P3d 464 (2008) (Demeanor testimony "went directly to the core of the victim's truthfulness."). Put simply, "testimony must assist, not supplant, the jury's assessment of credibility." *State v. Remme*, 173 Or App 546, 562, 23 P3d 374 (2001).

■■ With the foregoing cases and principles in mind, we proceed to consider petitioner's claim under the Oregon Constitution. *See State v. Kennedy*, 295 Or 260, 666 P2d 1316 (1983). Petitioner contends that the errors committed by his trial counsel violated Article I, section 11, of the Oregon Constitution, which guarantees to all criminal defendants in Oregon the right to adequate assistance of counsel. To be entitled to post-conviction relief, petitioner must show that his trial counsel failed to exercise reasonable professional skill and judgment and that petitioner suffered prejudice as a result. *Trujillo v. Maass*, 312 Or 431, 435, 822 P2d 703 (1991). Prejudice occurs only when the acts or omissions by counsel have a tendency to affect the outcome of the prosecution. *Id.*

■ The first step in our analysis, then, is to address whether the failure to move for a mistrial or to strike and request a curative instruction constituted a failure, on counsel's part, to exercise reasonable skill and judgment. As noted above, counsel appropriately objected to Lenahan's testimony on the ground that it was improper vouching for the witness. *See* 224 Or App at 148 ("Your honor, I'll object to the characterization of the witness as 'honest.' "). The trial court sustained the objection and counsel thereafter took no action to move for a mistrial or to request that the testimony be struck and that a curative instruction be given. In explanation, counsel acknowledged that, although he thought at the time that his objection and the court's ruling had adequately protected his client's rights, upon reflection, he agreed that he should have done more. Specifically, he indicated that he should have moved to strike. He also acknowledged that had he moved for a mistrial, the court likely would have given a curative instruction.

We agree that counsel erroneously believed that his objection had fully protected his client from the prejudicial effects of the vouching, and conclude that counsel's failure to move to strike and request a curative instruction was unreasonable. As the Supreme Court held in *Milbradt*, even an immediate curative instruction by the trial court may not be effective to ensure that the jury would not be improperly influenced by vouching testimony if the instruction does not expressly tell the jury to "disregard totally" the testimony. 305 Or at 630. Counsel's objection to Lenahan's testimony, even though it was sustained, did not ensure that the jury would disregard the testimony and thus was not sufficient to protect petitioner. To protect petitioner from unfair prejudice, counsel needed to move for a mistrial or, at a minimum, move to strike the testimony and request a curative instruction telling the jury to disregard it.

The post-conviction court found that counsel made a tactical decision not to move for a mistrial. Assuming that counsel's belief that he was winning the trial made it reasonable not to move for a mistrial, that tactical decision does not provide a justification for his failure to move to strike and request a curative instruction to guard against the risk of the jury being influenced by Lenahan's vouching. Petitioner's criminal trial, like the trials in *Milbradt* and *McQuisten*, lacked any physical evidence to corroborate either the victim's or petitioner's account. The *Milbradt* court characterized that situation as a "credibility contest," in which improper vouching is even more prejudicial to the defendant than in other criminal trials, due to the critical importance of the credibility of the victim's and the defendant's competing testimony. 305 Or at 628. A curative instruction from the trial court would have explained to the jurors the practical impact of sustaining the objection to Lenahan's testimony. The court could have immediately told the jury to totally disregard the detective's opinion, and also could have explained that the witness was supposed to answer the question by stating what he observed, and that they, as the jury, were to determine the implications of those observations, such as whether they suggested credibility on the part of the victim.

In short, even if counsel's belief that he was winning the trial justified his failure to move for a mistrial, there was still a risk that the jury would be improperly influenced by

Lenahan's vouching. Counsel's failure to guard against that risk by moving to strike the testimony and requesting a curative instruction constituted a failure to exercise reasonable skill and judgment.

■      We next determine whether that failure was prejudicial to petitioner's case—that is, whether it had a tendency to affect the outcome of the prosecution. In holding that admission of explicit vouching testimony supporting the credibility of the victim is harmful and reversible error, *Milbradt* and *McQuisten* suggest, but do not directly dictate, the answer. The question here is not whether there is little likelihood that Lenahan's vouching affected the verdict, *see State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (stating standard for harmless error on direct review), but whether striking the testimony and giving a curative instruction would have tended to affect the result of the prosecution, *see Trujillo*, 312 Or at 435 (stating standard for prejudice on post-conviction review). Of course, the question of whether the vouching affected the verdict is a factor in our analysis; if there is little likelihood that the testimony affected the verdict, then there is little reason to think that striking it and giving a curative instruction would have tended to affect the result.

We readily conclude that Lenahan's testimony had at least some likelihood of influencing the jury and thus affecting the verdict. The jury heard a uniformed police detective vouch for the victim's honesty. The possibility that the testimony affected the verdict is magnified by the fact that the criminal trial appears to have been an extremely close case for the jury. It returned a verdict of acquittal on three of the four counts of sexual abuse, and its guilty verdict on the fourth count was by a 10 to 2 vote. The charges all involved the same victim and turned on whether the jury believed the victim's testimony. Thus, the possibility that Lenahan's testimony vouching for the credibility of the victim affected the verdict is very real.

That said, we see no reason why the trial court could not have crafted an instruction that would have cured the potential prejudice resulting from Lenahan's testimony. *See State v. White*, 303 Or 333, 343, 736 P2d 552 (1987) ("We are

confident that the trial judges of this state have ability to tailor an instruction that will point out the reason that the jury is to disregard egregiously improper attempts to influence the jury and thus deny to a defendant a fair trial."). Nor do we see any reason why the jury would not have been able to follow a curative instruction. *See State v. Smith*, 310 Or 1, 26, 791 P2d 836 (1990) (jurors are presumed to follow instructions if reasonably possible). It follows that counsel's failure to request a curative instruction had a tendency to affect the result of the prosecution and therefore prejudiced petitioner.

The state argues that the trial court's generic instructions given at the conclusion of petitioner's criminal trial cured any prejudice. We disagree. The court instructed the jury, "When I have sustained objections to evidence, or ordered that evidence be stricken or excluded from your consideration, you must follow these rulings." A curative instruction will undo the unfair prejudice only if it is effective. To undo the unfair prejudice of vouching, an instruction must, at a minimum, tell the jury to "disregard totally" the testimony. *Milbradt*, 305 Or at 630. The instruction that the court gave in petitioner's criminal trial did not do that. It merely told the jury that it must "follow" the court's ruling sustaining counsel's objection to Lenahan's testimony, without explaining that the jury could not consider it.

To be effective, a curative instruction also must be timely. We have previously held that a general instruction given by the trial court at the conclusion of a criminal trial was not effective to cure the unfair prejudice created by improper statements by the prosecutor. *State v. Halford*, 101 Or App 660, 663, 792 P2d 467 (1990). The recognition that an after-the-fact instruction is not effective underlies the rule that a motion for a mistrial—to which courts frequently respond by giving a curative instruction rather than declaring a mistrial—must be made immediately after the prejudicial testimony is given. *See State v. Shafer*, 222 Or 230, 235, 351 P2d 941 (1960) ("The time to move for a mistrial is when the allegedly prejudicial act occurs, not after the incident has been allowed to pass by, for then it is too late for the trial judge to caution the jury and mend the harm."). Simply put, in this case, the trial court's generic instruction was not specific enough and was not given at a time when it might have

been able to undo the potential for unfair prejudice caused by Lenahan's vouching.

In sum, petitioner's counsel's unreasonable failure to move to strike and request a curative instruction had a tendency to affect the outcome of petitioner's criminal trial. Thus, petitioner was denied the adequate assistance of counsel guaranteed to him under Article I, section 11, of the Oregon Constitution. It follows that the post-conviction court erred in denying petitioner's petition for post-conviction relief. Because petitioner is entitled to relief on that ground, we do not reach petitioner's assertion that the post-conviction court erred in denying his claim for relief based on his right to counsel under the federal constitution.

Reversed and remanded for entry of judgment granting post-conviction relief.