Submitted May 18, 2016, reversed and remanded May 17, 2017

PATRICK JOSEPH MANEY,
*Petitioner-Appellant,*

*v.*

Rick ANGELOZZI,
Superintendent,
Columbia River Correctional Institution,
*Defendant-Respondent.*

Multnomah County Circuit Court
120303343; A156638

397 P3d 567

Jed Peterson and O'Connor Weber LLP filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

**DEHOOG, J.**

Petitioner appeals the denial of his petition for post-conviction relief, contending that his trial attorney rendered inadequate assistance of counsel by failing to address purportedly improper comments and interruptions by the trial court. In the underlying criminal case, a jury convicted petitioner of various offenses arising from allegations that he had beaten his 14-year-old daughter with a wooden board and subjected her to other assaultive conduct. During petitioner's trial, the court repeatedly interrupted the proceedings to chastise defense counsel, address witnesses, and instruct the jury, usually without prompting by the prosecution or defense counsel. Petitioner argues that, because those unilateral actions disproportionately favored the prosecution and, therefore, conveyed to the jury the impression of judicial bias, that conduct deprived him of a fair trial. Petitioner contends that, as a result, his attorney's failure to move for a mistrial in response to the court's actions constituted inadequate assistance of counsel. Defendant superintendent[1] disputes petitioner's assertion that the trial court's actions were inappropriate but argues that, in any event, the post-conviction court did not err in concluding that petitioner had not been prejudiced by his attorney's failure to take corrective action. Because we conclude that defense counsel's inaction resulted in a substantial denial of petitioner's constitutional right to adequate assistance of counsel, we reverse the judgment of the post-conviction court.

## BACKGROUND

The material facts are procedural and undisputed. Petitioner's convictions arose from two separate incidents involving his teenage daughter, A. In the first incident, the state charged petitioner with assault in the second degree, felony assault in the fourth degree, and criminal mistreatment, all for disciplining A with "boarding"—striking her on the buttocks and legs with a wooden board. Petitioner

---

[1] Defendant in this post-conviction relief case is the superintendent of the Columbia River Correctional Institution, where petitioner is serving his sentence in the underlying case. *See* ORS 138.570 (requiring that petitions for post-conviction relief name, as the defendant, the superintendent of the facility in which the petitioner is serving sentence).

did not deny using a board to discipline his daughter, but denied that his actions had been criminal. As a defense to those charges, petitioner argued that ORS 161.205(1) rendered his conduct lawful because, as a parent, he had used only the degree of physical force reasonably "necessary to maintain discipline or to promote the welfare" of A.[2] In addition to raising a reasonable-discipline defense, petitioner argued that the state had not proved certain elements of the charges arising from that incident, including that the board that he had used had been a "dangerous weapon" within the meaning of ORS 163.175(1)(b) (defining offense of assault in the second degree),[3] and that another of his children had witnessed the alleged felony assault in the fourth degree, without which that alleged conduct would at most constitute a misdemeanor.[4] In the second incident, petitioner purportedly "bumped" A into a wall as they walked past each other, leading to a separate misdemeanor charge of assault in the fourth degree.

In the course of petitioner's trial, the court repeatedly interrupted defense counsel and certain witnesses. The court first interrupted defendant's attorney shortly into his opening statement. Counsel appears to have been explaining to the jury that petitioner could not be found guilty of assault in the second degree unless he was shown to have used a "dangerous weapon."[5] Counsel stated:

---

[2] Under ORS 161.205(1), it is a defense to any charge involving the use of physical force that a "parent, guardian, or other person entrusted with the care and supervision of a minor * * * may use reasonable physical force upon such minor * * * when and to the extent the person reasonably believes it necessary to maintain discipline or to promote the welfare of the minor * * *."

[3] As charged in petitioner's case, a person's conduct constitutes assault in the second degree if the person "[i]ntentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon." ORS 163.175(1)(b). In turn, ORS 161.015(1) defines "dangerous weapon" as "any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury."

[4] ORS 163.160(3) provides that fourth-degree assault is a Class C felony if the assault "is committed in the immediate presence of, or is witnessed by, the person's or the victim's minor child or stepchild or a minor child residing within the household of the person or victim."

[5] As noted, a "dangerous weapon" is one "readily capable of causing death or serious physical injury" under the circumstances in which it is used. ORS 161.015(1).

"[DEFENSE COUNSEL]: First off, you're going to have the—he's charged with Assault in the Second Degree, that's the big one here. That's the physical injury with a dangerous or deadly weapon, very serious charge. This is a charge you get when you put a bullet in somebody or when you put someone in a wheelchair, okay? Serious physical injury—"

The court abruptly intervened *sua sponte*, leading to the following exchange:

"THE COURT: You know, I'm going to—ladies and gentlemen, I'm going to interrupt at this point in time. Physical injury does not require a bullet in somebody or putting them in a wheelchair, and I think I'd better instruct you because I don't—I don't want us to be off on a—

"[DEFENSE COUNSEL]: I was talking about the dangerous weapon, what a dangerous weapon is.

"THE COURT: All right.

"[DEFENSE COUNSEL]: I apologize.

"THE COURT: All right. Physical injury does not require the same—it does not have the same requirements. Maybe I should instruct you even so, so we don't have any issues here regarding that matter."

Following that exchange, the trial court instructed the jury by reading various uniform jury instructions defining the terms "dangerous weapon," "physical injury," and "serious physical injury." The court then reminded the jurors that they were not to attempt to apply that law to the facts until the conclusion of the trial and allowed defense counsel to continue.[6]

The court again interrupted during the evidentiary portion of the trial. Petitioner's 18-year-old son, who had been a minor at the time of the "boarding" incident, was alleged to have witnessed that offense, but testified

---

[6] The trial court stated,

"[W]e're getting a little beyond ourselves here, ladies and gentlemen, but * * * I want to make sure that your function at this stage * * * of the proceedings is to hear the facts and make decisions about the facts. * * * I think that we're getting a little ahead of ourselves here where we're asking you to start making decisions or start applying the facts to the law."

in support of petitioner. In response to cross-examination by the prosecutor on another matter,[7] the son replied, "I do not remember." Again without provocation, the trial court stepped in, as follows:

"THE COURT:  Now, I'd [implore] you—let me tell you, Mr. Maney—

"THE WITNESS:  Yes.

"THE COURT:  —you're here under oath, I expect you to tell the truth, the whole truth, and the whole truth only.

"THE WITNESS:  I understand.

"THE COURT:  I don't want—expect you to sort of scat around, *you may want to consider that question and answer it again*, if you would."

(Emphasis added.) Two questions later, the court again interrupted the same witness—once again without prompting—this time to instruct the witness not to volunteer information beyond the specific questions he had been asked.

The court later interrupted petitioner himself during his direct testimony. Petitioner's attorney had asked him to look at pictures of his daughter's injuries and to provide his opinion as to whether he "went a little too far this time." Petitioner answered:

"[PETITIONER]:  I made the decision based on what I knew at the time. The pictures, as you've seen, they show bruises. They don't show any—any physical injury other than contusions in the skin, although I have a little question about the last two. * * * [I]f my remembrance is right these last two * * * were taken a day later. Well, obviously the bruises you see on the date that she left are much more apparent than these two. And I'm saying this because of—

"THE COURT:  Well, I think we'll just—

"[PETITIONER]:  —the severity—my—

"THE COURT:  Just a moment, * * * I think we're going to let the attorneys argue * * * to the jury. I don't think we

---

[7] The prosecutor asked, "Is there a reason why your mom would have told the police that [your sister] took a cedar stick and hit you the day she was interviewed; would that be incorrect?" There were no other references at trial to the witness's mother having made that statement to the police.

need the witnesses making arguments so *** if you have questions you wish to ask this witness, [counsel], please go ahead and ask those questions."

Defense counsel acknowledged the court's comments, but the admonition continued: "I've let a little bit beyond what I would consider to be appropriate cross-examination [*sic*] where *** 'you just tell the jury whatever you want to tell them,' that's not an appropriate question."

Finally, the trial court repeatedly interrupted defense counsel in the course of his closing argument. The first such interruption came when counsel was explaining the reasonable-discipline defense, which, as noted, permits a parent or similarly situated person to use "*reasonable* physical force *** when and to the extent the person *reasonably believes* it necessary" for the discipline or welfare of a child under the person's care or supervision. ORS 161.205(1)(a) (emphases added). Counsel explained that the issue of "when and to the extent the person reasonably believes it necessary" required the jurors to ask themselves, "Well, what was [petitioner] thinking?"

The trial court abruptly stopped counsel and requested a sidebar, after which it permitted counsel to continue.[8] The following argument and subsequent interruption ensued:

"[DEFENSE COUNSEL]: Anyhow, the judge is going to read this to you, but pay close attention. Two parts to this, one part kind of talks about what the person reasonably believes is necessary, and the first part just says 'may use reasonable physical force on a minor.' So it seems to have the objective reasonable person standard. And a part that talks about, well, what did the person think at the time.

"THE COURT: It's still the reasonable person standard, ladies and gentlemen.

"[DEFENSE COUNSEL]: *Right.*

___

[8] We assume from the surrounding context that the trial court advised counsel that the reasonable-discipline defense involved a strictly objective standard. *See State v. Waller*, 22 Or App 299, 302, 538 P2d 1274 (1975) (stating that the elements of the defense were not met, despite the defendant's subjective belief that force had been necessary, because the force used was not reasonable).

"THE COURT:  Now, [counsel], *I'm not going to allow you to confuse the jury here*. I told you before and I'll tell you again: Reasonable person is the standard."

(Emphases added.)

Another interruption followed shortly thereafter, as defense counsel prepared to read the legal definition of "dangerous weapon" to the jury. The court interjected, stating:

"Why don't you let me read them that, and you just make your argument, [counsel]? * * * [L]adies and gentlemen. Wait a minute. My responsibility is to instruct you as to the law. You can make whatever argument within the range of that, but let's just let me instruct them, and you just go ahead and argue the law—*argue what you think it's going to be*."

(Emphasis added.) Notably, the trial court had permitted the prosecutor to read various instructions to the jury without interruption or correction, including the same "dangerous weapon" instruction that the court would not allow defense counsel to read.

The court intervened twice more during closing argument. First, on its own motion, the court stopped defense counsel from discussing evidence that had been ruled inadmissible. The court offered to strike that portion of the argument, and the prosecutor agreed. Second, as defense counsel neared the end of his argument, he urged the jurors to remain impartial, even though they "might want to throw the book at [petitioner]," as he was "sure * * * [the prosecutor had] felt when she charged all these crimes." As the prosecutor objected and began to argue that counsel's argument was improper, the court interrupted and emphatically agreed:

"It is not [an] appropriate comment, ladies and gentlemen. * * * *I normally don't invade to this degree*, but actually the grand jury of Wasco County, I believe, returned the indictment * * * not that the State does not have an involvement in that.

"But what [the prosecutor]'s decisions and choices are— this is the grand jury that made this decision on how [petitioner] should be charged."

(Emphasis added.)

All told, the trial court made a number of comments that potentially reflected negatively on defense counsel and the merits of petitioner's defenses over the course of a two-day trial.[9] At the conclusion of trial, the jury found petitioner guilty of the assault and criminal mistreatment charges arising from the "boarding" incident, and further found him guilty of harassment as a lesser-included offense of the misdemeanor assault charge.[10]

Following an unsuccessful appeal, *see State v. Maney*, 244 Or App 1, 260 P3d 547 (2011), *rev den*, 351 Or 545 (2012), petitioner filed for post-conviction relief under ORS 138.510. Petitioner alleged, among other things, that trial counsel had performed inadequately by "fail[ing] to move for a mistrial based on the judge's hostile conduct toward the defense, displayed on multiple occasions in front of the jury."[11] The post-conviction court denied petitioner relief after concluding that his attorney had not been inadequate and that counsel's performance at trial had not prejudiced petitioner. The post-conviction court's written "findings and conclusions" included the following:

"Admonition to pet[itioner] and children not excessive and does not show hostility to pet[itioner]'s cause.

"After sidebar att[orney] continues to argue about what pet[itioner] thought and [court] does admonish him that the standard is that of a reasonable person. Does not demonstrate hostility.

"* * * * *

"After considering all of the issues, this court finds no inadequacy and no prejudice."

---

[9] In addition to the foregoing, we also note instances of the court interrupting defense counsel to question witnesses and elicit testimony favorable to the prosecution, accusing counsel of interrupting witnesses, and opining, in regard to the dimensions of the board used to strike the victim, "I'm not sure it's very relevant."

[10] The jury acquitted petitioner of strangulation, which was alleged to have occurred at around the same time as the "boarding" incident. Petitioner's trial attorney did not argue that the reasonable-discipline defense applied to the strangulation charge, only that there was a factual dispute.

[11] Petitioner's post-conviction relief petition outlined the various interruptions and exchanges recounted above.

Based on those determinations, the post-conviction court denied relief on petitioner's inadequate assistance of counsel claim. Petitioner now appeals that ruling.

## ANALYSIS

To obtain post-conviction relief, a petitioner must demonstrate by a preponderance of the evidence that there was a "substantial denial" of the petitioner's constitutional rights during the proceedings that resulted in conviction. *Green v. Franke*, 357 Or 301, 311, 350 P3d 188 (2015) (citing ORS 138.530(1)(a)). We review the denial of post-conviction relief for errors of law. *Id.* at 312 (citing *Peiffer v. Hoyt*, 339 Or 649, 660, 125 P3d 734 (2005)). We must accept the post-conviction court's express and implicit factual findings if there is evidence to support them. *Montez v. Czerniak*, 355 Or 1, 8, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014). With those standards in mind, we proceed to consider the decision of the post-conviction court.

Petitioner seeks relief on the ground that he received inadequate assistance of counsel in violation of Article I, section 11, of the Oregon Constitution.[12] The right to counsel is violated when an attorney fails to exercise reasonable professional skill and judgment, and the defendant suffers prejudice as a result. *Lichau v. Baldwin*, 333 Or 350, 359, 39 P3d 851 (2002). Petitioner contends that his trial attorney performed inadequately by failing to move for a mistrial in response to the trial court's unilateral actions and that, as a result, he did not receive a fair trial. We thus consider whether an attorney exercising reasonable professional skill and judgment would have believed that a motion for mistrial was warranted under the circumstances, and whether an appropriate motion "'could have tended to affect'" the outcome of petitioner's case. *Green*, 357 Or at 323 (quoting *Lichau*, 333 Or at 365); *Burdge v. Palmateer*, 338 Or 490, 493, 112 P3d 320 (2005). In conducting that inquiry, "we

---

[12] Petitioner also claims that he was denied the right to effective counsel under the Sixth and Fourteenth Amendments to the United States Constitution. The standards for evaluating counsel's performance are "functionally equivalent" under the state and federal constitutions. *Montez*, 355 Or at 6-7. Because petitioner prevails under the state constitutional standard, we do not consider his federal claim.

make every effort to evaluate a lawyer's conduct from the lawyer's perspective at the time, without the distorting effects of hindsight." *Burdge*, 338 Or at 492 (internal quotation marks omitted).

The underlying premise of petitioner's post-conviction claim is that the court's actions denied him a fair trial by giving the jury the impression that the court was biased against him. In assessing counsel's perspective, then, we consider whether the circumstances would have indicated to all reasonable counsel that petitioner's right to a fair trial was at risk. *See Pachl v. Zenon*, 145 Or App 350, 361, 929 P2d 1088 (1996), *rev den*, 325 Or 621 (1997) (recognizing that trial counsel's duty to object to potentially prejudicial conduct depends largely on whether that conduct does, in fact, impair the defendant's fair-trial rights); *see also Simpson v. Coursey*, 224 Or App 145, 153-54, 197 P3d 68 (2008), *rev den*, 346 Or 184 (2009) (stating that, because "there was still a risk that the jury would be improperly influenced" by vouching testimony, trial counsel's "failure to guard against that risk by moving to strike the testimony and requesting a curative instruction constituted a failure to exercise reasonable skill and judgment").

The essence of petitioner's "fair trial" argument appears to be the right to trial by an impartial jury, which, like the right to counsel, is guaranteed by Article I, section 11, of the Oregon Constitution. "[T]rial by an 'impartial jury' means trial by a jury that is not biased in favor of or against either party, but is influenced in making its decision only by evidence produced at trial and legal standards provided by the trial court." *State v. Amini*, 331 Or 384, 391, 15 P3d 541 (2000). If a jury is exposed to improper conduct so prejudicial as to deny the defendant a fair trial, the appropriate remedy is a new trial.[13] *See, e.g., State v. Logston*, 270 Or App 296,

---

[13] As the Supreme Court recognized in *Amini*, 331 Or at 395, the right to trial by an impartial jury guaranteed by Article I, section 11, is less broad than the right to a fair and impartial trial under the Due Process Clause. Our case law, however, often equates prejudicial conduct—conduct that tends to influence the jury so as to affect the verdict—with the denial of a fair trial. *See, e.g., State v. Logston*, 270 Or App 296, 298, 347 P3d 352 (2015); *id.* at 307 n 4. Although we are not aware of any distinction between the two provisions for purposes of petitioner's case, we nonetheless note that our use of the term "fair trial" in this opinion is in the more limited Article I, section 11, sense.

303, 347 P3d 352 (2015) (citing *State v. Rosenbohm*, 237 Or App 646, 649, 241 P3d 344 (2010), and reversing conviction due to prosecutor's improper jury argument).

In *State v. Mains*, 295 Or 640, 664, 669 P2d 1112 (1983), the Supreme Court recognized that improper judicial conduct may result in jury bias. In that case, a trial judge openly displayed disdain for the testimony of two defense experts.[14] On review, the Supreme Court reasoned that the judge's questions and comments had reflected his "contempt for the * * * testimony and went beyond the bounds of proper judicial control of the trial." *Id.* at 655. Those questions and comments—especially the judge's pointed question, "[Y]ou realize that you are under oath, don't you?"—"tended to * * * embarrass" the witnesses and to weaken their credibility. *Id.*

In concluding that the trial court had overstepped its bounds, the Supreme Court expressed its concern that the jury would be influenced by the attitude of the trial judge, rather than by the evidence and the arguments of counsel. *Id.* at 659. The court reasoned that "[e]xcessive intervention by a trial judge substantially diminishes the effectiveness of the adversary system and may deprive a litigant of [the] right to an impartially administered trial." *Id.* In support of that reasoning, the court noted that ORCP 59 E provides that "[t]he judge shall not instruct with respect to matters of fact, nor comment thereon," and further observed that the Oregon Rules of Evidence lack the equivalent of FRE 614, which, in jurisdictions that have such a rule, gives judges explicit power to call and question witnesses. *Id.* In the court's view, those provisions of Oregon law expressed the legislature's apparent trust in an adversary system in which the parties, and not the trial court, test the witnesses' testimony. *Id.* As the court explained:

> "The judge is not a litigant, nor a witness, and above all, not an advocate for either side. Therefore, we believe that judicial intervention before a jury should be kept within

---

[14] For example, after one expert witness had used the expression "a thousand other things you learn," the trial judge repeatedly asked the expert to list the thousand things he had learned. *Mains*, 295 Or at 650-52. Later, the judge repeatedly questioned the other expert regarding his methodology. *Id.* at 652-54.

bounds, and the *judicial questioning of witnesses or admonition of counsel in the presence of a jury* should be a rare occurrence. Almost any question the judge may pose is fraught with the danger of giving the impression to the jury that the judge is an advocate for one of the parties."

*Id.* at 658 (emphasis added).

Although the court in *Mains* concluded that the trial court had overstepped its bounds, the court ultimately held that that conduct constituted harmless error in light of the "probable impact of the judge's conduct on the minds of the jurors." 295 Or at 664. Because the judge's comments and questions had related to "peripheral issues" and the judge had otherwise conducted the 24-witness, 10-day trial with "complete impartiality and judicial skill," the court found it unlikely that the error would have changed the result of the trial. *Id.* at 662, 665.

*Mains* does not suggest that every question a judge may ask of a witness or every statement made to counsel risks improperly influencing the jury. A court enjoys "broad discretion to control the proceedings before it." *State v. Rogers*, 330 Or 282, 300, 4 P3d 1261 (2000). Appropriate judicial conduct includes intervening as needed "to conduct a proper, expeditious and just trial." *Mains*, 295 Or at 656. Even direct admonishment of counsel may be necessary to control a trial. *See State v. Matson*, 120 Or 666, 670, 253 P 527 (1927). A judge must not, however, "take on the role of counsel, nor appear to align [the court] with any litigant." *Mains*, 295 Or at 656.

Various decisions from this and other jurisdictions suggest that whether a jury has been improperly influenced by a trial court's appearance of bias or advocacy is a contextual inquiry. *See id.*; *see also, e.g.*, *State v. Coss*, 53 Or 462, 475, 101 P 193 (1909); *United States v. DeLuca*, 692 F2d 1277, 1282 (9th Cir 1982); *People v. Stevens*, 498 Mich 162, 170-78, 869 NW2d 233, 241-46 (2015), *cert den*, ___ US ___, 136 S Ct 811 (2016) (applying a totality-of-the-circumstances test). Among the relevant considerations are the nature and tone of the judge's involvement, the relative extent of judicial intervention given the overall length and complexity of the trial, whether the court's comments were made in response

to attorney misconduct, and the number and adequacy of any curative instructions that the court may have given. If, in light of those considerations, there is "little likelihood" that the verdict was affected by the trial court's actions, then the defendant did not suffer prejudice and, therefore, was not denied a fair trial. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003); *see also Mains*, 295 Or at 664 (citing *State v. Van Hooser*, 266 Or 19, 25-26, 511 P2d 359 (1973), and applying the pre-*Davis* standard for harmless error).

We must evaluate the alleged inadequacy of defense counsel's performance and the resulting prejudice, if any, in that context. That is, given the trial court's actions and the arguments available to counsel under the circumstances, would every attorney exercising reasonable professional skill and judgment have concluded that those actions had given the jury an impression of judicial bias sufficient to deny petitioner the right to a fair trial, and moved for a mistrial in response? Or, in the words of the Supreme Court, would all reasonable counsel have concluded that, under the totality of the circumstances, petitioner was harmed by the "probable impact of the judge's conduct on the minds of the jurors" and taken corrective measures? *Mains*, 295 Or at 664.

When considering the constitutional adequacy of a defense attorney's performance, we bear in mind that "[t]he constitution gives no defendant the right to a perfect defense[.]" *Krummacher v. Gierloff*, 290 Or 867, 875, 627 P2d 458 (1981). That is to say, we will not "second-guess a lawyer's tactical decisions in the name of the constitution unless those decisions reflect an absence or suspension of professional skill and judgment." *Gorham v. Thompson*, 332 Or 560, 567, 34 P3d 161 (2001). However, the failure to recognize that "influences in the courtroom are so inherently prejudicial that a fair trial is at risk," and to take action in response, is not an acceptable tactical or professional choice. *See Pachl*, 145 Or App at 361; *see also Simpson*, 224 Or App at 153. We proceed with those considerations in mind.

In isolation, the trial court's first interruption of counsel—occurring, as it did, during his opening statement—would likely be of little significance to attorneys exercising reasonable skill and judgment. As petitioner points out,

the court intervened *sua sponte.* And, under the circumstances, counsel's argument about the meaning of "dangerous weapon" was probably more confusing than outright erroneous; thus, the court's unprompted interjection could be viewed as being unnecessarily critical of counsel and his grasp of the law. Nonetheless, given that the interruption came early in the trial—when, as the court noted, it was not time for the jury to apply the law—reasonable counsel is unlikely to have viewed the court's efforts to control the proceedings and ensure that the jurors were correctly instructed as conveying a message of favoritism toward the prosecution. *Cf. Mains*, 295 Or at 656 ("Certainly, it is appropriate for a judge to * * * eliminate argument in opening statements[.]").

Somewhat more noteworthy is the court's next intervention on behalf of the state, when the court reminded petitioner's son that he was under oath and admonished him not to "scat around" in his answers. To be sure, the warning of a witness about the oath after a series of evasive responses or a clear refusal to answer appropriate questions is unlikely to provoke much response from even the most vigilant of counsel. Here, however, the trial court's unsolicited admonition in response to the answer, "I do not remember," carried with it a substantial risk that the jury would perceive the judge as personally distrusting petitioner's witness. *See Mains*, 295 Or at 655 (court's pointed reference to oath tended to embarrass expert witness and weaken his credibility). That is especially true given the court's suggestion that petitioner's son reconsider his previous response. And, notably, the court's interruption came just as the prosecutor was questioning him about typical disciplinary practices in petitioner's household, a context that the jury was likely to have considered highly significant when evaluating petitioner's conduct. Because that testimony favored petitioner's case, reasonable counsel would have recognized that the trial court's decision to single it out for reproach had the potential to weaken petitioner's reasonable-discipline defense in the eyes of the jury.

Similarly, the jury may well have perceived the trial court's disparate treatment of petitioner's own testimony as favoring the prosecution. Earlier in the trial, the court had

allowed petitioner's wife—over defense counsel's objection—to express *her* opinion regarding the nature and propriety of petitioner's disciplinary practices. In defense of that ruling, the court had stated, "I think she has a right to an opinion on this. She's a participant in discussing with him the boarding * * *." Whether or not it was proper for petitioner to express his own opinion on the severity and reasonableness of the "boarding" incident, the court's selective and unilateral decision to bar petitioner, but not the victim's mother, from giving that testimony could well have conveyed a judicial preference for the state's view of the case, a risk that counsel should have recognized. That message would likely have been reinforced when the court unfairly characterized the questions that defense counsel had asked petitioner as being nothing more than "you just tell the jury whatever you want to tell them."

As noted, the belittling of petitioner's attorney continued into his closing, putting petitioner's defense in an even more negative light, and yet counsel voiced no objection. In fact, when the trial court abruptly cut short his argument about the reasonable-discipline defense, counsel's only response was to acknowledge the court's impromptu charge to the jury that the defense contemplated a reasonable-person standard. Still dissatisfied, the court again berated him, stating:

> "Now, [counsel], *I'm not going to allow you to confuse the jury here*. I told you before and I'll tell you again: Reasonable person is the standard."

(Emphasis added.) As with counsel's opening statement, it is largely immaterial whether counsel or the court had the more correct view of the law. More significant for purposes of petitioner's post-conviction claim is the manner in which the court approached the issue and how competent counsel would have been expected to respond. By telling counsel that it would not allow him to confuse the jury, the court risked signifying to the jurors its belief that counsel was, in fact, trying to mislead them, yet counsel made no effort to counter that message.

The same risks arose from the trial court's second interruption of counsel's closing, which once again provoked

no response. Much as it had allowed the state, but not the defense, to introduce testimony regarding "reasonableness," the court during closing permitted the prosecutor, but not defense counsel, to read the legal definition of "dangerous weapon." As with counsel's articulation of the reasonable-discipline defense, his argument was not a model of clarity.[15] But in its eagerness to control defense counsel's argument, the court once again risked signaling to the jury its distrust of petitioner's case. Such a message could have diminished counsel's ability to persuade the jury considerably, thereby significantly increasing the risk that petitioner's right to a fair trial would be affected. *Cf. State v. Knight*, 343 Or 469, 483, 173 P3d 1210 (2007) (stating that, because the jury had been exposed to the defendant's harsh criticism of his own attorney, "[n]o juror thereafter was going to view defense counsel as more credible and persuasive than the prosecuting attorney"). Moreover, because it had allowed the prosecutor to read substantially the same instruction that it refused to let defense counsel read, the court could also have given the "impression to the jury that the judge [was] an advocate for one of the parties," substantially undermining petitioner's position. *Mains*, 295 Or at 658.

Having reviewed those actions of the trial court, we next consider whether, in light of those actions, the post-conviction court correctly concluded that trial counsel was not deficient in failing to respond by moving for a mistrial. Here, petitioner contends that any attorney exercising reasonable professional skill and judgment would have objected or moved for a mistrial in response to the court's improper comments and questions throughout the trial. In response, the superintendent does not suggest that counsel recognized the potential effect of the trial court's actions but made a

---

[15] Counsel stated, "So this is basically the definition of what a dangerous weapon is, and I left out a few words, I'll read you the whole thing here." The court interrupted, leading to the exchange previously quoted. 285 Or App at 602. Once counsel resumed his argument, he explained that the full "dangerous weapon" instruction describes an "instrument, article, or substance" that is attempted to be used, threatened to be used, or actually is used. He "left out a few words" to tailor the definition to the case: the board was the "instrument" at issue for purposes of the charge. Notably, however, the prosecutor also paraphrased portions of the instruction in her argument, defining "dangerous weapon" as an "instrument" and leaving out the terms "article or substance."

strategic choice not to respond. Instead, the state argues that counsel could reasonably have considered the court's actions to be proper and, accordingly, neither objectionable nor grounds for a mistrial.

In support of that reasoning, the superintendent relies on an affidavit signed by counsel and submitted to the post-conviction court, in which counsel explained:

> "I had observed the trial court judge's demeanor in other trials and knew of his reputation as a judge that interjects during trial more so than other judges. I did not believe that his conduct warranted a mistrial, nor did I believe he would grant a motion for a mistrial based on his own interjections during [petitioner]'s trial."

On appeal, the superintendent echoes counsel's beliefs and contends that a motion for mistrial was unwarranted "in light of the demanding standards for proving judicial bias." But other than the concise explanation in counsel's affidavit, the superintendent offers no substantial justification for the belief that a mistrial was unwarranted and would, therefore, have been denied, nor does the superintendent separately seek to justify counsel's failure to object.

As noted, the post-conviction court denied petitioner relief due to its determinations that, contrary to petitioner's allegations, the trial court's admonition of petitioner and his son was "not excessive and [did] not show hostility to [his] cause," and that the court's admonition of counsel regarding the applicable legal standard "[did] not demonstrate hostility." As a result, the post-conviction court concluded that defense counsel's representation had not been inadequate or prejudiced petitioner.

In light of the foregoing discussion, we cannot agree with the post-conviction court's conclusion that counsel performed adequately. As detailed above, several of the trial court's statements appear to have crossed lines that the Supreme Court drew in *Mains* many years before petitioner's trial. *See Clark v. Nooth*, 284 Or App 762, 769-70, 395 P3d 32 (2017) (explaining the relevance of existing decisional law in evaluating counsel's performance). It is not necessary for us to decide whether all reasonable counsel would have concluded that each of those statements warranted a response.

That is because we conclude that, at least cumulatively, the court's actions would have alerted any reasonable attorney that defendant's right to a fair trial was at risk and that there was a need for counsel to bring that risk to the court's attention through an appropriate motion.

Specifically, as our account of petitioner's trial reveals, by its conclusion, the court had repeatedly—and unilaterally—intervened on behalf of the state, weakened the credibility of a significant defense witness, afforded preferential treatment to a state's witness, and conveyed the court's apparent belief that defense counsel was an unreliable and perhaps untrustworthy advocate. Any attorney exercising reasonable professional skill and judgment would have recognized the potential that those actions had to prejudice the jury and, as a result, petitioner's right to a fair trial. Accordingly, to the extent that counsel's averment that he did not believe a mistrial was warranted suggests his understanding that the trial court's conduct was not potentially prejudicial, that understanding was not reasonable.

Furthermore, having recognized that the court's actions had the potential to deprive petitioner of a fair trial, competent counsel would have taken appropriate steps to keep that from happening. And, at least by the conclusion of trial, the proper step for defense counsel was to seek a mistrial. *Cf. Logston*, 270 Or App at 303 (proper remedy for the denial of a fair trial is a new trial). Counsel may justifiably have believed that this particular judge would not declare a mistrial, but that belief did not justify inaction. Despite counsel's belief that the trial court would deny his motion, it remained his duty to take appropriate action on behalf of his client, regardless of its likelihood of immediate success. *See Walraven v. Premo*, 277 Or App 264, 283, 372 P3d 1 (2016) ("[W]hether an objection to the instruction would have been successful with a particular trial judge is also irrelevant; an objection would have * * * preserved the error[.]"); *Haynes v. State of Oregon*, 121 Or App 395, 397-99, 845 P2d 949 (1993) (rejecting argument that trial counsel reasonably failed to object to jury instruction that raised a substantial appellate issue, but that arguably complied with existing law, because "a competent defense attorney at least would have raised the issue * * * and preserved it for appellate review"). Under the

circumstances of this case, counsel's inaction did not reflect an exercise of reasonable professional skill and judgment.

Our conclusion that counsel's performance was deficient takes us to our final inquiry: whether petitioner suffered prejudice as a result. We conclude that counsel's failure to act did prejudice petitioner. Prejudice occurs when trial counsel's inadequate performance "'could have tended to affect'" the outcome of the case. *Green,* 357 Or at 323 (quoting *Lichau,* 333 Or at 365). "[T]he tendency to affect the outcome standard demands more than a mere possibility, but less than a probability." *Id.* at 322. That determination involves "an extensive consideration of the evidence presented by both the state and petitioner at the criminal trial," as well as "any other aspects of the criminal trial that are pertinent to the issue * * * considered in light of the issues at trial in their entirety[.]" *Wright v. Nooth,* 264 Or App 329, 334, 336 P3d 1, *rev den,* 356 Or 517 (alterations in original; internal quotation marks omitted).

Here, the superintendent reasons that petitioner could not have been prejudiced because the court was unlikely to have granted a mistrial. But that argument falls short. As petitioner correctly argues, the operative question is not whether the court would have granted a mistrial; the operative question is whether the court's response to an appropriate objection or motion, whatever that response might have been, would have tended to affect the outcome of petitioner's case. *See Green,* 357 Or at 323; *Walraven,* 277 Or App at 283 ("[A]n objection would have * * * likely yielded a reversible error on appeal[.]").

When a defendant in a criminal case moves for a mistrial in response to arguably prejudicial conduct, the trial court has the discretion "to grant the motion, to cure the effect of inappropriate conduct or testimony by giving a proper instruction instead, or to do nothing at all." *State v. Evans,* 211 Or App 162, 164, 154 P3d 166 (2007), *aff'd,* 344 Or 358, 182 P3d 175 (2008). However, if the right to a fair trial has been compromised, then "the trial court *must* take corrective action, provided defense counsel objects." *Warren v. Baldwin,* 140 Or App 318, 330, 915 P2d 1016, *rev den,* 324 Or 229 (1996) (emphasis added). The trial court's decision

is reviewable for an abuse of discretion, taking into consideration the seriousness of the prejudice and the manner in which the court sought to cure the error, *see Evans*, 211 Or App at 166-69 (listing cases), with the "decisive issue [being] whether defendant's ability to receive a fair trial was impaired," *State v. White*, 119 Or App 424, 427, 850 P2d 1158, *rev den*, 317 Or 486 (1993). *Accord State v. Bowen*, 340 Or 487, 508, 135 P3d 272 (2006), *cert den*, 549 US 1214 (2007).

Thus, had petitioner's attorney moved for a mistrial, it would have been incumbent upon the trial court to determine whether petitioner's right to a fair trial had been impaired, and, if so, to take appropriate corrective action. *Warren*, 140 Or App at 330. As noted above, 285 Or App at 607-08, that assessment—which focuses on the likelihood that the jury has been improperly influenced in the course of trial—considers the nature and tone of the trial judge's involvement, the degree of judicial intervention given the overall length and complexity of the trial, whether the court's comments were made in response to counsel's misconduct, and the number and adequacy of any curative instructions that may have been given.

As is apparent from our description of petitioner's trial, the nature and tone of the court's comments varied measurably. At times, the court addressed the jury merely to clarify the law, as it did during petitioner's opening. At other times, however, the court addressed its comments to petitioner's counsel or his witnesses, often in a manner that the jury may have viewed as belittling, distrustful, and one-sided. In light of that behavior, the jury might well have concluded that the court found petitioner's attorney and witnesses unreliable at best.

We note that the post-conviction court at least implicitly considered this factor in determining that the trial court had not displayed "hostility" to petitioner or his cause. In our view, however, by focusing on hostility—an understandable focus, given the allegations of the petition—the post-conviction court took too narrow a view. A jury may be influenced by a court's attitude, whether or not that attitude is "hostile." Accordingly, the post-conviction court's

determination that the court in petitioner's case did not show hostility does not mean that the nature and tone of the court's comments had no tendency to influence the jury's decision. Thus, to the extent that the post-conviction court's finding of no "hostility" reflects its conclusion that the trial court would necessarily have had grounds to deny a timely mistrial motion, we disagree.

Next, in response to a timely motion, the trial court might have recognized that, because petitioner's trial was relatively short and straightforward, the court's intervention was substantial, given the overall length and complexity of the trial. Unlike *Mains*, where the trial judge conducted the better part of a 10-day trial with "complete impartiality and judicial skill," 295 Or at 662, here the court took an active role throughout petitioner's trial. Moreover, by suggesting that counsel did not understand the defense that he had raised—or that he might even be purposely misstating the applicable law—the court's comments risked damaging defense counsel's credibility on the issues that were most critical to petitioner's defense.

For example, for petitioner to be acquitted on the second-degree assault charge—by far the most serious charge he faced—counsel had to persuade the jury that his view of the law was correct as to one of two key issues: whether petitioner's conduct constituted reasonable parental discipline, or whether the board that petitioner admittedly used to punish his daughter was a "dangerous weapon." As counsel implored the jury, "You've got to * * * decide where is the line, how much is too much. The law kind of leaves this open for juries to decide." By potentially discrediting counsel in the jurors' eyes, the court may well have closed their minds to counsel's argument as to where that line fell in petitioner's case.

As for whether counsel's conduct somehow warranted reproach, the record discloses little to explain the trial court's frequently pointed comments. Here, none of the court's more notable criticisms were prompted by objections from the state, and the transcript reveals relatively little reason to object, much less anything that would seem to justify the court's unilateral decision to repeatedly admonish

counsel in front of the jury. *See Mains*, 295 Or at 658 (stating that "admonition of counsel in the presence of a jury should be a rare occurrence"). Of course, had the state objected, it would have been reasonable for the court to instruct counsel to rephrase any improper questions or incorrect characterizations of the law. But here, even though the transgressions that the trial judge perceived are, for the most part, not readily apparent, the trial court repeatedly chastised counsel as though he had defiantly flouted court orders. And, on at least one of those occasions, the judge's harshest criticism came *after* counsel had acknowledged the court's direction and had begun to correct his approach.[16]

Finally, had counsel moved for a mistrial, the trial court could have considered whether a curative instruction would sufficiently offset any impact of the court's seemingly negative view of petitioner or his attorney. Here, because counsel did not give the trial court that opportunity, the only instructions relevant to the post-conviction court's assessment of prejudice were two uniform jury instructions that the court read at the start and finish of trial. Those general instructions, routinely given in every case, inform jurors that they are not to interpret the court's rulings or comments as indications that the court has formed any opinion about the outcome of the case.[17] And, as we have often observed, absent an overwhelming probability that they will not do so, jurors are presumed to follow their instructions. *See State v. Barone*, 329 Or 210, 229, 986 P2d 5 (1999), *cert den*, 528 US 1086 (2000) (noting that presumption). Here, however, the uniform instructions, which were generic and remote-in-time, were insufficient to dispel the negative effects of the court's specific disparaging comments made

---

[16] The trial court did much the same thing with petitioner's son on the stand, where the instruction not to "scat around" and to answer a question again came *after* that witness had assured the court that he understood the obligation to testify truthfully.

[17] The precautionary instruction given at the beginning of trial, Uniform Criminal Jury Instruction 1004, states, "You must not interpret any statement, ruling or remark I make during this trial as any indication that I have formed any opinion about the facts or outcome of this case." Uniform Criminal Jury Instruction 1005 ("Functions of the Court and Jury"), given at the conclusion of trial, states, "Do not allow anything I have said or done during the course of this trial to suggest that I have formed any opinion about this case. Keep in mind that a judge is required by law to give certain instructions in every criminal case."

contemporaneously with petitioner's presentation of his defense.[18] *See Frangos v. Edmunds*, 179 Or 577, 611, 173 P2d 596 (1946) ("The prejudicial effect of frequent comments on the evidence cannot be wholly removed by a final instruction to the jury to disregard what the court has previously said."); *Warren*, 140 Or App at 331 n 12 ("The curative effect of such a general instruction is outweighed by the more specific risks of prejudice outlined above.").

In view of the foregoing considerations, we conclude that counsel's failure to move for a mistrial had a tendency to affect the outcome of petitioner's case. Collectively, the trial court's actions created an unacceptable risk that the jury's decision would be influenced by the court's attitude toward petitioner and his attorney, rather than solely by the relative merits of the parties' cases. *See Amini*, 331 Or at 391 (stating that an impartial jury is one influenced "only by evidence produced at trial and legal standards provided by the trial court"). Further, to the extent that those actions gave the jury the impression that the court was biased in favor of the prosecution, the court's recitation of generic jury instructions at unrelated times seems unlikely to have been sufficient to dispel that risk.

Thus, in this case, counsel's inaction prejudiced petitioner regardless of what steps the trial court might have taken had counsel objected or moved for a mistrial. As our review of the relevant factors suggests, petitioner had valid grounds for concern that his right to trial before an impartial jury had been put at risk. Thus, had the trial court responded inadequately—or not responded at all—to an appropriate objection or motion for mistrial, that exercise of discretion would have been subject to appeal, *White*, 119 Or App at 427, and, given the review we have just undertaken, there is at least "more than a mere possibility" that petitioner's appeal would have succeeded. *See Green*, 357 Or at 322. If, on the other hand, the judge had chosen to give an effective curative instruction, that response might have

---

[18] The "recognition that an after-the-fact instruction is not effective" is one reason for the requirement that a motion for mistrial be made immediately following prejudicial conduct. *Simpson*, 224 Or App at 155. Once a prejudicial act has been allowed to pass by, it is often "too late for the trial judge to caution the jury and mend the harm." *State v. Shafer*, 222 Or 230, 235, 351 P2d 941 (1960).

mitigated any adverse effects on the jury. *See Evans*, 211 Or App at 167-68 (explaining that a court may properly deny a motion for mistrial if a curative instruction sufficiently remedies any prejudice). Here, the court was not faced with that choice, because counsel never gave the court an opportunity to consider it. As a result, counsel's deficient performance forced petitioner to accept the verdict of a jury whose impartiality could reasonably be questioned and, in doing so, caused petitioner prejudice.

## CONCLUSION

In denying relief to petitioner, the post-conviction court concluded that counsel had not performed inadequately and that counsel's performance had not prejudiced petitioner. We conclude otherwise. By not taking corrective action in response to the trial court's frequent, unilateral, and critical interruptions, trial counsel failed to exercise reasonable professional skill and judgment, and that failure prejudiced petitioner.

Reversed and remanded.